Staples, J.,
delivered the opinion of the court.
This is a controversy between the appellant, the widow of William T. Simmons, on the one hand, and the judg= ment creditors of said Simmons. on the other. The appellant has been in possession, with her infant children, of the mansion house of the deceased husband since his death, without having dower assigned to her. During that time she has paid the taxes annually chargeable upon the property, and she now claims the right to be subrogated to the lien of the commonwealth, and to have the amount so paid refunded to her out of the property. This claim is resisted by the creditors on various grounds. The statute defining the rights of the appellant is as follows:
“ Until her dower is assigned her, the widow shall be entitled to demand of the heirs or devisees one-third part of the issues and profits of the other real estate which was devised or descended to them, of which she is dowerable j ■ and, in the meantime, may hold, occupy and enjoy the mansion house and curtilage without charge.” Sec. 8, ch. 106, p. 854, Code of 1873.
This provision is a substitute for what is known at common law as the widow’s quarantine—a right to hold and occupy the capital messuage or mansion house for forty days after the husband’s death, and during that time' to be provided with all necessaries at the expense of the heir, and, before the termination of forty days, to ■ have her dower assigned her. If, however, the forty days expired without her dower being assigned, she might be turned *756 out of possession, and put to her action for the recovery of her dower.
Under the statute, the condition of the widow is greatly improved; for she has the right to remain in the mansion house, without charge, until the heir, or some one for him, assigns her dower. 1 Lomax Digest, p. 109.
It is a matter of more difficulty to determine the precise nature of the widow’s interest in the mansion house under this statute. On the one hand, it has some incidents of a life estate, which is defined to be a freehold interest in land, the duration of which is limited to the life or lives ■of a particular person or persons, or to the happening or^ not happening of some uncertain event. For it has been Feld, it matters not how contingent or uncertain the duration of the estate may be, or how probable is its determimation, if it is capable of enduring for a life, it comes -within the category of estates for life. 1 Washb. on Real Property, 103. Inasmuch, therefore, as the assignment of ■dower may never be made, as the widow may remain in the mansion house during her lifetime, it is argued that «he is to be regarded as having a life estate; and so it has been held in New Jersey under a statute somewhat similar ■to ours. Ackerman v. Shelp, 3 Halst. R. 125; Craige v. Morris, 25 New Jer. Eq. Re. 467. And this doctrine has been cited with seeming approbation by Chancellor Kent. A Kent Com. p. 62.
On the other hand, the supreme court of Alabama, consisting at the time of very able judges, in the construction ■of a similar statute, has decided that the widow has no vested estate in the mansion house, “but a mere right to bold and occupy until dower is assigned her. It is but a ■permissive possession, determinable whenever the heir or person holding the fee elects to assign dower.” Weaver & Gains v. Crenshaw, 6 Alab. R. 873; Inge v. Murphy, 14 Alab. R. 289; Shelton v. Carrol, 16 Alab. R. 152.
A like decision has been made by the supreme court of *757 Kentucky. Porter’s heirs v. Robinson, 3 A. K. Marshall’s R. 1113.
We are inclined to think the doctrine of the court is in the main the more correct exposition of the statute. At common law, upon the death of the husband the freehold is cast upon the heir; the widow has no estate in the land until dower is assigned her. She has neither seizin nor a right of entry, but a mere inchoate interest, a right of action for the recovery of her dower. 2 Scribner on Dower, p. 26. Whilst, under the statute, she has the privilege of occupying the mansion house, it is at the pleasure of the owner of the fee. He may enter at any time, assign dower, and put an end to her possession and interest. A possession thus held at the mere will of another is of too precarious a nature to be termed a freehold estate in land.
Again, one of the duties devolving almost universally upon a tenant for life is to prevent the buildings and fences from going to decay by proper and suitable repairs, and also to keep down the interest accruing upon existing encumbrances. The rule with regard to the interest is said to be so inflexible that the tenant is required to pay it, even if it takes the whole of the rents and profits of the estate. Poindexter’s ex’ors v. Green’s ex’ors, 6 Leigh, 504.
If the widow occupying the mansion house, under the statute, is to be regarded as tenant for life, and therefore bound for the taxes, the learned counsel will find it difficult to assign a good reason why she is not equally bound to the performance of the other duties usually recognized as incumbent upon the tenant for life. 1 Wash, on Real Property, 135. We think the interest of the widow under the statute is more analagous to a tenancy at will than a life estate. It is not meant to say it is actually such a tenancy, because that, perhaps, can only arise under contract; but that it has most of the features of an estate at will, for a tenancy at will is a tenancy at the will of either *758 party. It may arise by implication of law: as where the tenant is in possession by consent of the owner for an indefinite period with some other intention than to create the relation of lessor and lessee. 1 Washb. 510. The effect of the statute is merely to extend the quarantine. The object manifestly was to coerce the heir to assign dower, and until this was done, to protect her in the enjoyment of the homestead and the rents and profits accruing therefrom.
It is also to be borne in mind that our laws have provided no mode of compelling the widow to pay the taxes accruing upon the mansion house during the period of her occupation.
Upon the death of the owner intestate, his real estate descends upon his heirs. It is charged to them upon the commissioner’s books, and to them exclusively the law looks for the payment of the accruing taxes. The widow occupying the mansion house is not known, nor is her interest recognized in the various statutes relating to the collection of the public revenues. Blodget v. Brent, 3 Cranch. C. Ct. R. 394. If the heir is in default in paying them, her goods and chattels on the premises cannot be held liable. She does not claim under the heir as tenant, but independantly of him, and by appointment of law. Code 1873, ch. 4, §37.
It is very true that the commonwealth, having a lien on the property for taxes, may enforce that lien against the widow, not because she is personally liable, but because the estate is bound for the commonwealth’s dues, even in the hands of an innocent alienee. And if, through the default of the heir, the widow, to save her estate, is, compelled to pay what the law requires him to pay, she may compel him to refund the amount so paid for his benefit.
In all this, the heir has no just cause of complaint. If he is unwilling to pay the taxes whilst the widow is in the occupation of the mansion house, all that he has to do is to assign her dower, and thus relieve himself of the taxes *759 upon one-third of the estate. Failing in this, it is fairly to be presumed he is content to bear the burden upon his inheritance, notwithstanding the widow may be in possession and enjoyment of it.
These views are undoubtedly correct as applied to an adult heir, whose duty it is to assign dower, and who is delinquent in the performance of his duty.
But the rule is by no means so clear as applied to an infant heir of tender years, without other guardian than the mother, and who continues to reside in the mansion house without applying for an assignment of dower.
In such case the heir, being under control of the mother, cannot himself assign dower. He cannot take a step towards the protection of his rights. The widow may choose to remain in the occupation of the mansion house, to demand one-third of the rents and profits of the other real estate, and thus cast upon the heir the entire burden of paying the taxes upon the whole estate. In a ease of that sort, and in other cases of like kind, it may be a grave question whether the widow, as the natural guardian of the heir, being in default with respect to the dower, would not be held to contribute her ratable proportion of the taxes. The case of Grayson & wife v. Moncure, 1 Leigh, 449, although not involving this precise point, was decided on grounds analagous to those now presented.
The revisors of 1849 reported a provision giving to the widow the right to occupy and have the issues and profits of the mansion house, and the tract of land on which it is situate, until the assignment of dower; but if she be the guardian of the heirs, she shall account with her wards for two-thirds of the said issues and profits. 2d Report of Revisáis, p. 566, §§ 8-9. The legislature, however, struck out so much of the section reported as gave to the widow the right to occupy the land, and imposed upon her a liability for two-thirds of the rents and profits, and adopted the statute as it now stands, giving to her the possession of *760 the mansion house and curtilage, without charge; thus m- . . s ’ cheating plainly a- purpose to exempt the widow from all during the period of her occupancy, even though sjje might be in default in failing to apply for an assignment of dower. Possibly the legislature may have supposed that where there are infant heirs, they would generally reside with the mother in the mansion house, and upon her would devolve the whole burden of their support. Whatever advantage she might derive from the use of the property would generally be met by a corresponding burden in taking care of and maintaining the infant heirs. We do not deem it necessary now to decide what are the cases in which the widow, as between herself and her infant children, would be precluded from asserting against them, or against the estate, a claim for reimbursement of taxes paid by her. In the present case, we think she is entitled to have refunded her what she has so paid. Bearing in mind that the appellant, according to the views already presented, is not legally liable for the taxes; that they are not charged to her on the commissioner’s books; that the law has made no provision by which they can be collected from her, but that they constitute a lien on the property as against the heirs and against the creditors in of the commonwealth—let us enquire whether, in case, she is not entitled to be substituted to that lien. the first place, then, the infant heirs are not interested the present controversy. The claims of creditors in any aspect of the case are more than double the valué of the property. The contention is, therefore, between the appelon the one hand and the appellees on the other, as creditors. Whilst the latter have liens, by judgment, on property, they have no claim, even against the heirs, to and profits, until a decree of sale or sequestration. against the widow, they have no pretense of claim for rents and profits, until assignment of dower. As against them, she is legally entitled to the use and occupa- ■ *761 tion, rents, issues and profits of the mansion house and curtilage, free of all charge, until that assignment is made. The lien of the commonwealth for taxes is paramount the lien of their judgments, and must first be satisfied. If these taxes are not or cannot be paid by the heir, some one must pay them while the litigation is pending in order to preserve the property from a forced sale by the commonwealth. The obligation of the widow to pay them for the protection of her interest is no greater than that of the executors to pay for the protection of theirs. As the statute gives her the right to occupy without charge, they cannot impose upon her the duty of discharging the taxes, as a condition of her occupation. If one of them should pay in order to prevent the commonwealth’s sale, he would have the right to be refunded the amount so paid. She stands upon ground equally high. If it be said she has the use and occupation of the property, in the meantime, the answer is that under the statute she is entitled to it without charge; but if she be compelled to pay the taxes, then to that extent she is charged for the privilege of remaining in the mansion house. The further answer is, that in this case during all the period of the occupation of the mansion house by the widow, she has maintained and supported the two infant heirs out of her own scanty means. If, therefore, they have sustained any loss by the widow’s failure to have dower assigned her, and by her occupation of their two-thirds, they have been more than compensated by the support and maintainance furnished them. The appellees cannot complain of this, for if the appellant had not paid the taxes, they must have remained a charge upon the property, to be finally satisfied by a process of sale, or the appellees must have paid them as they accrued during the process of litigation. The original bill in this case was filed in July, 1868, merely for the purpose of enforcing a vendor’s lien, for a small balance of unpaid purchase money, which was *762 ultimately paid by the appellant out of her own means. .. , ... .. At that time it was not known or believed there was any debt of any magnitude against the estate. Two years afterwards, in 1870, E. W. Lyles filed his petition claiming to be a judgment creditor of the intestate. In November, 1871, the circuit court rendered a decree for the sale of the property, without having assigned the appellant her dower, or even ascertaining its commuted value. Upon appeal, that decree was reversed by this court in 1876, and remanded for further proceedings.
When the commissioner proceeded to take the account directed by the decree of this court in 1878, then for the first time, all the claims against the estate, with one single-exception, were asserted. With reference to these claims the commissioner reports, “They are all antiquated judgments recovered, not against the intestate individually, but against him as one of a long since defunct concern, which have slept in the archives of the courts of Pittsylvania county for many years, and have been now, after the decedent’s death, dragged forth, and therefore the commissioner has been inclined to look more favorably upon the claims of the widow.” Without stopping now to enquire into the correctness of this conclusion of the commissioner, it is certain the taxes were paid by the appellant out of her own scanty resources during the pending of the litigation, and in entire ignorance of the claims which have been since asserted against the estate. It so happens that the only creditor who exercised any diligence in preferring his demand, E. H. Lyles, is entirely excluded from any participation in the fund by the prior liens of the. creditors who did not appear until 1878, and who now claim that the discharge of the commonwealth’s lien by the appellant shall ensue to their exclusive benefit.
Subrogation is the creature of the chancery courts. It is not founded upon any idea of contract, but upon principles of equity and good conscience. It is a mode which *763 equity adopts to compel the ultimate discharge of a debt by him who in good conscience ought to pay it. Brandt on Suretyship, § 260. It is not essential that the invoking the remedy should technically occupy the position or relation of surety for the debt. It is enough that he is required to pay for his own protection and indemnity, or to relieve his estate of a subsisting lien or incumbrance accruing by operation of law, or created by act of the party in whose behalf the payment is made. The appellant, in paying the taxes, cannot be considered a volunteer. The property of which she has possession under the statute was debtor to the state, and she had the right to make the payment for her own protection and indemnity, and to look to the property for reimbursement.
It has been said, however, this principle could not be applied in this case, because it would carry with it also the commonwealth’s right of distress for taxes. But this is not a legitimate conclusion.
A creditor may have a lien by execution on his debtor’s personal property, and a lien by judgment on his realty. When the surety pays the debt, the lien of the execution is gone, but a court of equity keeps alive the lien of the judgment on the real estate for the benefit of the surety. And so when the taxes are paid by one standing in the relation of surety, the remedy at law by distress is gone, but the lien would still be preserved in the equity forum, upon the real estate, if necessary, for purposes of justice. If that court cannot give to the party all the remedies of the commonwealth, it is no reason it should not afford such as are appropriate to its jurisdiction.
For these reasons we are of opinion that the circuit court erred in sustaining appellee’s third exception to the commissioner’s report and in refusing to allow appellant a lien upon the house and lot in controversy for the taxes paid by her.
The next question is whether the appellant is to be paid *764 for the improvements upon the property she claims to have made during the time of her occupancy. There is no doubt that these improvements were of some advantage to the property, and probably contributed to its increased value. The appellant appears to have paid over f700 in that way, principal and interest. An examination of the several items of the account will, however, show that the expenditures were of such a character as the occupying tenant might well make in the way of repairs in consideration of the use and enjoyment of the property. And although she was not bound to make them, they contributed to her own beneficial enjoyment and comfort. We are therefore of opinion she is not entitled to be repaid these outlays.
We think, in allowing her for the taxes paid and rejecting the account for improvement, the equity of the case is fully attained and justice done to all the parties. We are therefore of opinion the circuit court did not err in sustaining appellee’s fourth exception to the commissioner’s report for alleged improvements made by her.
This brings us to the question of the appellant’s right of substitution to the lien of James Jamieson, the vendor of the property for the balance of the purchase money, which was paid by the appellant. There is no doubt of the appellant’s right to be substituted to this lien, a right which appertains to her as occupant of the property under the statute, and also by virtue of her title to one-third of the premises upon the assignment of dower. The commissioner reported in favor of her claim, and the circuit court rightly sustained the report.
A question has been presented with respect to the appellant’s obligation as doweress to contribute to the discharge of this lien on the estate, which is paramount to her right of dower. The rule is well settled in such cases, and is, that where the whole debt due the mortgagee or vendor is to be paid, the widow must pay in gross a sum equivalent to one-third of the annual interest during her life. That *765 sum is ascertained by fixing the present value of an annuity equal to the interest upon one-third of the debt, computed for so many years as she may be supposed live, according to the tables of the chances of life, and to the state of her health. 1 Wash, on Real Estate, 111—2-18, 291
_ In this case the appellant has paid off the incumbrance, but the rule is not thereby varied.
The amount for which she is liable must be ascertained in the mode already indicated, and the sum deducted from what she has paid in discharge of the vendor’s lien. The balance due her constitutes a lien on the property, in her behalf.
The last and only remaining point to be considered is that part of the decree which directs the property to be rented out until the accounts can be taken and a sale made.
It is said this is erroneous because the appellant has the right to occupy the mansion house free of charge until dower is assigned her; and if that cannot be done, then she has the right to occupy till the sale is made and the commuted value ascertained and paid to her. The circuit court, after proper enquiries upon this point, determined that it was impracticable to assign dower in kind, and that a sale of the property was necessary • and the appellant does not complain of this. It is, of course, impossible to ascertain the commuted value of the dower interest, or to pay it until the property is sold. The decree for a sale could not, however, be entered immediately because certain accounts were necessary to settle the priorities of those having claims against the estate. In the meantime, it would be unjust to the creditors for the appellant to occupy the whole property free of charge. The court has done all it could do in the way of assigning her dower,-and the fact that it is wholly impracticable to do so should not place her in a better position than she would be had dower been *766 assigned. The most that she can require is, that she be permitted to remain in possession, paying rent on two- ■ thirds of the property. The decree is, however, erroneous in two particulars: First, in directing the property to be publicly rented out to the highest bidder, and in requiring the appellant to give bond, with approved security, for the payment of the rent.
The effect of such a proceeding would probably, or might be, to force the appellant either to pay an excessive rent or to vacate the premises; and besides, she might be unable to furnish the required security. The amount due the appellant by reason of her dower, and her claim for taxes, constitutes an ample fund, under the control of the court, to secure the payment of the rent.
The proper course to be pursued was to appoint two or more discreet commissioners to fix the rental value of the property, with the privilege to the appellant to take it at that value; and in the event of her refusal, then to expose the property to the highest bidder at public outcry. And in either event, if the appellant becomes the vendee, the court to retain a lien on the amount due her, or so muchas seems necessary, as security for the payment of two-thirds of the rent agreed to be paid.
For the reasons already stated, the decree of the circuit court must be reversed and the case remanded to that court to be there proceeded with in conformity with the views herein presented.
Moncure, P., concurred in the result.
The decree was as follows :
The court is of opinion, for reasons stated in writing and filed with the record, that the appellant is entitled to be substituted to the lien of the commonwealth for the taxes paid by her upon the property in controversy, ac *767 cording to the report of Commissioner Harrison of the 16th April, 1878 ; and that the said circuit court erred in sustaining the exceptions of appellees, James O. & Son and B. W. Lyles, administrator, to so much of said report as allows the,-appellant a lien for said taxes in preference to the claims of other creditors.
The court is further of opinion that the appellant is entitled to be substituted to the lien of James Jamieson, the vendor, for the balance of purchase money which has been paid by appellant, and the circuit court did not err in so holding. But the court is further of opinion that as the appellant is liable for the interest accruing during her life upon one-third of said unpaid purchase money, she ought now to be charged with a sum in gross, to be ascertained by fixing the present value of an annuity equal to said interest to be computed for so many years as she may be supposed to live, regard being had to the state of her health; the sum so ascertained in gross to be deducted from the amount so paid by her, and the balance to constitute a lien in her behalf on the proceeds of sale under the control of the court.
The court is further of opinion that the circuit court, instead of a public renting of the property in controversy to the highest bidder, ought to have appointed two or more discreet commissioners to ascertain and assess the rental value of said property, reserving liberty to the appellant to become the lessee at such valuation; and if she declined or refused so to be, then the property to be rented out to the highest bidder. But in either event, if the appellant shall become the lessee, the court, instead of requiring her to give bond with approved security, should retain a lien upon the fund belonging to her under its control as security for two-thirds of the rent.
It is therefore decreed and ordered that for the errors aforesaid the decree of the said circuit court, to the extent here mentioned, be reversed and annulled, and in all other *768 respects affirmed; and that the appellees, James C. Silleman & Son and It. W. Lyles, administrator, out of the assets, &c., do pay to the appellant her costs by her expended in the prosecution of her appeal and writ of error aforesaid here. And it is further ordered and decreed that the cause be remanded to the said circuit court to be there proceeded with in conformity to this decree.
Decree reversed.