### Staunton.

COMMONWEALTH V. ASHLIN'S ADM'R & OTHERS.

SEPTEMBER 16, 1897.

1. TAXES ON REAL ESTATE OF DECEDENT—*Lien Paramount to Claim of Creditors—Real Assets—Judgment Against Personal Representative.*— The lien of the Commonwealth on land for taxes assessed thereon after the death of the owner is superior and paramount to the right of creditors of the decedent to subject the land to the payment of their debts. Where this lien has been perfected by a sale of the land for delinquent taxes and a purchase thereof by the Commonwealth, she stands as a purchaser for value. If she offers to relinquish her title only upon payment of the taxes justly due, creditors of the decedent cannot complain. While the real estate of a decedent is assets for the payment of his debts, that fact alone does not give a lien on his real estate for the payment of such debts, nor does a judgment against the personal representative of the decedent constitute such lien.

Appeal from a decree of the Circuit Court of Albemarle county, pronounced October 24, 1896, in two chancery suits, heard together—one under the style of *Scott* v. *Langhorne,* and the other of *Scott, by, &c.,* v. *Ashlin's Adm'r*—in which the Commonwealth, on her petition, was admitted a party.

*Reversed.*

The opinion states the case.

*Attorney-General R. C. Scott,* for the Commonwealth.

*Wm. B. Pettit,* for the appellee.

KEITH, P., delivered the opinion of the court.

The facts of this controversy, so far as they are material, are as follows:

Charles A. Scott, of the county of Albemarle, died in 1865, possessd of considerable real and personal estate. His widow, P. B. Scott, qualified as his administratrix, and in 1866 she, in her own right, as administratrix of her deceased husband, and as guardian of their infant children, filed a bill in the Circuit Court of Albemarle county for the administration of his estate, making all necessary parties defendants. Into this suit, at a later day, came the creditors of the decedent, and such proceedings were had, after arduous litigation, which ultimately found its way to this court, and was decided at the January term, 1890 (see *Scott* v. *Ashlin*, 86 Va. 581) that the rights of the widow, distributees, heirs, and creditors were finally fixed and determined, and the case was remanded to the Circuit Court. Into that court came the Commonwealth by Morton Marye, Auditor of Public Accounts, and filed a petition stating the death of Scott, the real estate of which he died seised, and the assignment of dower to his widow; that from 1883 to 1891 taxes had been assessed upon this land which were in arrears and unpaid, aggregating the sum of $327.72; that on the land allotted as dower the tax from 1885 to 1892 aggregated the sum of $122.37; that of this real estate 1,295 acres were purchased in the year 1886 by the Commonwealth for taxes delinquent and in arrears for 1883, and all the formalities required by statute were strictly complied with; that in 1888 the Commonwealth, for delinquent taxes in 1885, purchased the portion of the land assigned to the widow as dower, and, the statute law having been complied with, these tracts of land, without the execution of a deed, vested in the Auditor for the benefit of the Commonwealth in accordance with section 663 of the Code.

The Commonwealth prayed to be made a party defendant in the suit of *Scott* v. *Ashlin*, to be allowed to file its petition, and to enforce its title to the real estate of which Charles A.

Scott died seised, and that, as provided by section 3214 of the
Code (sub-section 6) and by section 3216, the cause be re-
moved to the Circuit Court of the city of Richmond.

This petition was filed and the creditors answered it, saying
that no part of the taxes claimed by the State accrued in the life-
time of Charles A. Scott, who died in March, 1865; that he was
indebted to respondents at the time of his death in large sums of
money, established by judgments and decrees set forth in the
record of these chancery suits. They further show that the
widow and heirs of Scott had resisted the right of the creditors
to have his real estate subjected to the payment of his debts, and
that pending the litigation, thus occasioned, the widow and heirs
had retained possession of the land, had failed to pay the taxes
thereon, and having suffered them to become delinquent should
now be compelled to pay them; that the purchase money for the
said lands would fall far short of satisfying the debts, and that it
would be inequitable and unjust to divert any part thereof to
the payment of the taxes. They aver that the law gave them
a lien on the land long before the taxes accrued, and that the
Commonwealth, in buying, acquired a title which is subordinate
to the right of the creditors. They further state that the Com-
monwealth, when it intervened for the purpose of having the
decrees which recognized the rights of the creditors annulled,
and to have the purchase money for the land sold applied to the
payment of the taxes, had voluntarily become a plaintiff in the
suit, and not a defendant, and was therefore not within the
purview of section 3214 of the Code, and the suits ought not to
be transferred to the Circuit Court of Richmond.

On the 21st of October, 1896, the causes of *Scott* v. *Lang-
horne* and *Scott* v. *Ashlin's Adm'r.* came on to be heard upon the
papers formerly read, the petition of the Commonwealth and the
answers thereto, and thereupon the court admitted the Com-
monwealth as a party plaintiff, and not as a party defendant,
and refused to transfer the cause to the Circuit Court of Rich-
mond, and, being "of the opinion that the lien for defaulted

taxes asserted by the Commonwealth in her said petition is subordinate to the rights and liens asserted by said Walton, administrator, as aforesaid, in behalf of his decedents for the debts due them by Charles A. Scott, deceased, at the time of his death in 1865, asserted and established in these causes long before the taxes were assessed, and that the Commonwealth, by the sales made to her or to the Auditor, acquired no right to displace the prior rights of said creditors, or to have the land or the proceeds of sale thereof, subject to the order of the court herein, discharged from the prior rights and liens of said creditors, and applied to the payment of said taxes; and it appearing that the debts of said creditors amount to much more than the proceeds of sale, the court doth adjudge and order that the said petition of the Commonwealth be dismissed."

From this decree and appeal was allowed by one of the judges of this court.

The question here presented has been decided by this court in the case of *Simmons* v. *Lyles*, 32 Gratt. 752. The widow in that case having paid off a vendor's lien upon the real estate, and the taxes due thereon, was held to be entitled to have the amount of the taxes thus paid refunded to her upon the sale of the land as against judgment creditors of her deceased husband. Judge Staples, delivering the opinion of the court, says: "The lien of the Commonwealth for taxes is paramount to the lien of their judgments, and must be satisfied. If these taxes are not and cannot be paid by the heir, some one must pay them while the litigation is pending, in order to preserve the property from a forced sale by the Commonwealth. The obligation of the widow to pay them for the protection of her interest is no greater than that of the executors to pay for the protection of theirs. As the statute gives her the right to occupy without charge, they cannot impose upon her the duty of discharging the taxes, as a condition of her occupation. If one of them should pay in order to prevent the Commonwealth's sale, he would have the right to be refunded the amount so paid. She stands upon ground equally

high. If it be said she has the use and occupation of the property, in the meantime, the answer is that under the statute she is entitled to it without charge; but if she be compelled to pay the taxes, then to that extent she is charged for the privilege of remaining in the mansion house." And further he says: "The widow, in paying the taxes, cannot be considered a volunteer. The property of which she has possession under the statute was debtor to the State, and she had the right to make the payment for her own protection and indemnity, and to look to the property for reimbursement."

In the more recent case of *Thomas* v. *Jones*, 94 Va. 756, Judge Harrison, delivering the opinion, says: "The second enquiry involves the order of priority between the tax lien and the vendor's lien. This court has held in *Simmons* v. *Lyle*, 32 Gratt. 752, that taxes are a prior lien to judgments obtained and duly docketed long prior to the date at which the taxes were assessed. There is no distinction, in principle, between the two cases; for the same reason that the tax is held to be prior in dignity to the judgment lien, it must be preferred to the vendor's lien. That taxes are prior in dignity to all other liens must be so from the very necessity of the case, otherwise the State would be powerless to collect her revenue. The liens upon the land would, as in the case at bar, often be greater than the value of the land, and, the tax lien being inferior, the land would escape all taxation."

The case before us is a far stronger one in favor of the Commonwealth than either of those just quoted. The Code, beyond controversy, gives to the Commonwealth a lien for five years upon the land as against which taxes are assessed. During the life of that lien the land was sold for its payment, and the Commonwealth became the purchaser. By force of the statute the title vested in the Commonwealth as a result of the sale, so that there is no question in the case of the statute of limitations. The Commonwealth holding a lien enforced it before the bar of the statute attached, and stands now as a purchaser for value of the

land upon which it rests. She had a lien and the ONLY COM-PLETE LIEN that rested upon this property. The judgments spoken of in the decree appealed from were all obtained after the death of Charles A. Scott, and while they served to ascertain the debt, have not the effect of judgments obtained during the lifetime of the defendant. It is true, that the lands of which he died seised were assets for the payment of all his debts whether reduced to judgment or not, but they were not a lien in any proper sense of that term. The Commonwealth having purchased the land came into court and offered to relinquish her position as purchaser upon the payment of the sum due her for taxes. She could have rested upon her rights as purchaser, but voluntarily submitting herself to the jurisdiction of the courts, and in thus relieving all concerned of any embarrassment in the assertion of their claims to this real estate upon the condition of having the taxes justly due paid to her, has acted with entire propriety, and the conduct of her officials, so far from being the subject of criticism, is worthy of commendation.

It was suggested in argument that the taxes were in some respects incorrectly stated in the record; but, if that be so, the error can be easily corrected in the Circuit Court.

For the foregoing reasons we are of the opinion that the decree of the Circuit Court, in so far as it dismisses the petition of the Commonwealth and subordinates her demand for taxes to the debts reported, is erroneous, and should be reversed.

*Reversed.*