# Richmond.

## MARYE, AUDITOR, v. DIGGS AND OTHERS.

### DECEMBER 6, 1900.

1. TAXES—*Liens—Suit to Collect—Method of Enforcing Collection—Juris-diction in Equity—Petition.*—Taxes can only be assessed, levied and collected in the mode pointed out by statute. When the State or a county has assessed and levied a tax, they are severally clothed with power to take the personalty by distress, and the realty by sale, for taxes in the most summary manner. And, although it be expressly declared that the tax shall be a lien on the property assessed, neither the State nor the county can maintain an independent suit in chancery to enforce such lien. If, however, a suit in chancery for a sale of land be already pending, the State or county may, in accordance with a general practice in this State, come into such suit for the purpose of collecting a tax from the proceeds of such sale. This power courts of equity may exercise in order to clear the title it proposes to sell. A person is sometimes allowed to become a party by petition when he could not maintain an inde-pendent suit for the same cause of action. *Commonwealth* v. *Ashlin,* 95 Va. 145, distinguished.

Appeal from a decree of the Circuit Court of Patrick county, pronounced December 22, 1899, in a suit in chancery, wherein the appellant was the complainant, and the appellees were the defendants.

*Reversed.*

The opinion states the case.

*Attorney-General A. J. Montague, P. Bouldin, Jr.,* and *J. M. Hooker,* for the appellant.

*Diggs & Perkins,* for the appellees.

KEITH, P., delivered the opinion of the court.

Morton Marye, Auditor of Public Accounts of the Commonwealth of Virginia, suing for the benefit of the Commonwealth and the county of Patrick, filed a bill in the Circuit Court of said county to enforce the lien for certain taxes due and unpaid upon a large tract of land, owned at the time the suit was instituted by J. Singleton Diggs. The bill charges that the title of this land was formerly in one John R. Allen, who remained charged with all the taxes upon it down to the year 1894. In Allen's name it had been returned delinquent, was sold, and bid in for the Commonwealth for taxes, but it afterwards appearing, for reasons which need not be specifically stated, that there had been no delinquency on Allen's part, he having parted with his title to one James L. Maury, the sale and purchase by the Commonwealth was void, and this land was assessed to James L. Maury and others for taxes accruing for each year from 1894 back to and including 1876, with interest, as provided by sections 479 and 632 of the Code of 1887. The taxes thus assessed were not paid, were returned delinquent, and the land in due time was regularly offered for sale by the treasurer of Patrick county, and it was again bid in by the Commonwealth on January 28, 1896, for taxes amounting as of that date to $4,412.32 due the State, and $12,298.36 due to the county. By conveyances referred to in the bill, Diggs now claims to be the fee simple owner, and the bill charges him as acting and treating the same as his own, irrespective of the rights of the Commonwealth and the county of Patrick. The bill further charges that Diggs has sold the timber on the land, which has again been sold by his alienee, and it is charged that these purchasers of the timber are making active preparations to cut and remove it from the land; that the timber is very valuable, but that the land itself is rugged, and will, when the

timber is removed, be insufficient to pay the taxes, levies and interest, which now amount to more than $20,000.

Diggs and those claiming rights in the timber under him are made parties defendant, and the prayer of the bill is that the defendants, their agents, employees, and all other persons be enjoined and restrained from cutting or removing any timber whatsoever, and from placing any sawmills thereon, and from interfering with said land in any way until the further order of the court; that Diggs may be required to redeem said land or discharge the clouds he has placed upon the title, and that he be enjoined from collecting any part of the purchase money due for the timber already sold.

This bill, it will be observed, avers that the title is in the Commonwealth by purchase at a tax sale, and that she comes into a court of equity to restrain trespass upon and waste of her property.

At a later day, an amended and supplemental bill was filed, in which it is claimed that if the complainant is not entitled to relief upon the grounds stated in the original bill, there exists a lien in favor of the State and county for taxes and levies, and that to protect them in their respective rights as lienors, the court will, under the peculiar circumstances of the case, restrain the defendants from trespass and waste, and take the necessary steps to sell the land and pay the liens upon it.

To these bills the defendants filed demurrers, pleas, and answers, which present a number of questions for adjudication. Of these, the most serious is that a court of chancery is without jurisdiction to entertain the bill of the plaintiff.

Before entering upon a discussion of this most interesting question, it may be well to observe that the right of the Commonwealth, as a purchaser of the land at a sale for delinquent taxes, is not insisted upon.

The decree of the Circuit Court, which in part grants the relief prayed for by the Commonwealth, and which is appealed

from because it did not grant all that she demanded, rests upon the proposition, not that the Commonwealth is a purchaser of the land in controversy, but that she and the county of Patrick have a lien upon it for taxes due and unpaid; and it is this aspect of the case alone that we shall consider.

It is insisted upon by counsel for appellees that neither the Commonwealth of Virginia nor the county of Patrick has any standing in a court of chancery to enforce a lien for taxes.

The proposition is that the obligation of the citizen to pay taxes is imposed by the State by virtue of her sovereign power; that it is purely of statutory creation; and that taxes can only be levied, assessed and collected in the mode pointed out by express statute. Cooley on Tax. (2d ed.), p. 15. At page 448 the same author says: "It is not uncommon to provide by statute for the enforcement by suit, either in the law courts or in equity, of the lien for taxes. * * * In considering this remedy by suit, it is to be kept in mind that it exists only by force of the statute." To the same effect, see Black on Tax Titles, sec. 54; Desty on Tax., Vol. I., 467.

In *People* v. *Biggins*, 96 Ill. 481, it is said: "A court of equity has no jurisdiction to enforce the lien upon real estate given by statute for taxes assessed thereon. Such lien is purely legal in its character, the creature of the statute, not arising upon contract, and can be enforced in the mode provided by the law of its creation, and in no other mode.

"If the revenue law be defective in respect of the remedy provided for enforcing such a lien, that is a matter of legislative concern, not calling upon the courts to provide a remedy by extending the equitable jurisdiction beyond its recognized limits.

"Nor does the fact that it is the State which is seeking to enforce the lien operate in any way to change the rule upon the question of jurisdiction. The officers of the State, in the collection of revenue, are as much bound to observe the law and

to proceed in the mode pointed out by the statute as an individual is required to observe the law in the enforcement of any right."

*Crapo* v. *Stetson*, 8 Met. 393, was an action of *assumpsit* to recover taxes from the town of New Bedford, Mass. It was held that: "It is well settled, that the law gives no remedy for the collection of taxes other than those provided by statute; and, unless the mode now sought to be enforced is given by statute, it does not exist." *Andover* v. *Gould*, 6 Mass. 44; *Brule County* v. *King*, 77 N. W. 107.

In *McLean County Precinct* v. *Deposit Bank*, 81 Ky. 254, the court says: "The power to levy or collect taxes is not one of the inherent powers of any judicial tribunal. The duty and the power is legislative. If when the Legislature fails to enact proper legislation, or to provide the means of collecting taxes imposed, the judiciary may interpose, the theory of the government and the distribution of powers are destroyed." *City of Camden* v. *Allen*, 26 N. J. 399; *Shaw* v. *Packett*, 26 Vt. 482.

The question under consideration is of such importance that we have deemed it proper to search the decisions of many States for precedents to guide us to a right conclusion. The cases which we have cited are sufficient to show the general tenor of opinion upon the subject.

We now come to a case decided by the Supreme Court of West Virginia, which, for obvious reasons, is entitled to great weight in aiding our determination. Judge Green, delivering the opinion, in which he reviews the cases to which we have referred and many others, says: "It is true that cases have been decided where it has been held that the imposition of a tax created a legal obligation to pay, on which the law raised an *assumpsit*, notwithstanding the statute gave another specific remedy; and on this implied *assumpsit* an action at law would lie; but these decisions are against both reason and the decided weight of authority. It would follow, therefore, that taxes

are not a lien upon lands unless made so by express language of the statute or by fair implication from the statutory language.

" When a municipal tax is declared to be a lien, and no mode of collection is prescribed by the statute, and no power to collect by sale exists, such lien may be enforced in equity by the municipal corporation instituting the suit, * * * yet a tax is not a debt, and the right of the municipality to bring such a suit in equity is a purely statutory right, which must be either expressly given, or be given by fair implication. * * * * It would seem necessarily to follow, that though a municipal tax was expressly declared by statute to be a lien, yet if a specific mode be provided, whereby the land may be sold to satisfy such a lien, no suit could be brought in a court of equity to enforce such a lien; for the foregoing decisions show that the specific statutory mode of collection must be pursued; and other cases lead to the same conclusion." Further on he says: " There is nowhere in our laws any authority to collect them by suit, or anything from which such authority could be implied." *Bd. of Ed.* v. *Old Dominion, &c.,* 18 W. Va. 445.

This decision was subsequently reaffirmed in *State* v. *B. & O. R. Co.,* 41 West Va. 81.

In many of the cases which we have considered, it seems to be conceded that if a tax be properly levied and assessed, and no means be provided by law for its collection, resort may be had to the courts for that purpose; and in such case, if the tax be made a lien upon real estate, a court of chancery would by parity of reason have jurisdiction to enforce it by sale of the land, but there is no such defect in our laws for the collection of taxes as would warrant courts in the assumption of jurisdiction for that purpose. As is well said by the Supreme Court of West Virginia in *State* v. *Railroad, supra,* where this whole subject is fully and ably discussed, and the conclusion reached that the courts have no jurisdiction to entertain suits for the collection of taxes: " The absence of remedies in the two States

(Virginia and West Virginia) through all their history is easily explained. The remedies given by statute were better, more speedy, and efficacious. These were sale of land for taxes, and distress of personalty, without exemption. Why fill the courts with suits, burden the State with endless delays of litigation, and burden the citizen with costs? If a railroad company defaults in payment of taxes, every wheel upon its tracks may be stayed, every particle of its movable property be taken, and its power to earn revenue taken away. What more drastic remedy can the wit of man devise? It is urged that the statute commands the railroad company to pay, and this begets obligation, and therefore action lies. Grant there is obligation, and it can be enforced; but the same statute points out the means of enforcement, and excludes a suit."

The citizen must come into a court and obtain a judgment before he can have execution against the property of his debtor. He must have a decree before he can sell the land of his debtor to discharge a lien upon it by judgment, but the State, when she has levied and assessed the tax, is clothed *ipso facto* with the power to take the personalty by distress, and the realty by sale for taxes, after a most summary proceeding. What more can she need? What necessity exists for the power to sue? In the language of the court just quoted: "What more drastic remedy can the wit of man devise?" Where the property of the citizen is not appropriated to the payment of taxes assessed against him, the failure is due, not to the insufficiencies of the remedies provided by law, but to the neglect and inefficiency of those whose duty it is to enforce them.

In *Commonwealth* v. *Ashlin*, 95 Va. 145, the State came into the Chancery Court of Albemarle county and filed her petition in the pending suits of *Scott* v. *Langhorne* and *Scott* v. *Ashlin's Administrator*, which had been brought to subject the real estate of Charles A. Scott to the payment of his debts. It appeared that the land had been sold for taxes; that at the

sale the State had become the purchaser, and its title under this purchase was complete. She might, therefore, have seized and appropriated the whole subject of litigation, but by her petition she offered to relinquish this right upon the payment of the taxes justly due. The question there discussed was as to the nature and extent of the lien for taxes. The right of the State to come into a court of chancery was not challenged. This court held that "the lien of the Commonwealth on land for taxes assessed thereon after the death of the owner is superior and paramount to the right of creditors of the decedent to subject the land to the payment of their debts. Where this lien has been perfected by a sale of the land for delinquent taxes and a purchase thereof by the Commonwealth, she stands as a purchaser for value. If she offers to relinquish her title only upon payment of the taxes justly due, creditors of the decedent cannot complain."

It will be observed that in the case just cited the Commonwealth came by petition into a chancery suit properly brought in the Circuit Court of Albemarle. A court of chancery will permit a party to seek its aid and protection by petition in a pending suit, although the petitioner would have no standing in court to institute a suit on his own behalf. Of this practice many illustrations may be given. · A creditor with a judgment for less than $10.00 could not enforce it by suit until a statute was passed permitting it to be done, but it is believed that he might at any time have come into a pending suit and have proved his claim; so in the case of a non-resident lienor, who may by reason of his non-residence bring suit in the United States Circuit Court to subject real estate to the payment of his lien, and into that suit, we apprehend, may, come domestic lienors, who would have had no standing in that court to institute the suit. *Stewart* v. *Durham*, 115 U. S. 61; *Belmont* v. *Columbia, &c. Co.*, 46 Fed. Rep. 336. The practice rests upon this principle: That courts of equity, being clothed with juris-

diction to sell real estate and administer the funds, must clear
the title which it proposes to sell, and to that end, will convene
before it all those who have liens upon it. We believe it is the
practice in the courts of the United States to sell land subject
to liens, but doubtless the jurisdiction exists to first ascertain
and marshal the liens, and then sell free from encumbrance.

In the case of *Commonwealth* v. *Ashlin, supra,* suit had been
properly instituted, as we have seen, to subject the land of Scott
to his debts. The demand of the Commonwealth constituted
such an encumbrance and cloud upon it as would have impaired,
if not defeated, its sale. Therefore a court of chancery right-
fully entertained the petition as a necessary incident to the
jurisdiction it was bound to exercise, and that the Common-
wealth relinquished its right as purchaser and accepted the
amount due for taxes in full discharge of its claim, was a matter
by which no one else was aggrieved. This is in accordance with
the general practice in the State, which always protects the
Commonwealth and her collecting officers wherever a court of
chancery is called to administer a fund, and it is found that
there is a demand against it for unpaid taxes.

We are of opinion that neither the Commonwealth nor the
county of Patrick can maintain a suit for the collection of
taxes, and the decree of the Circuit Court of Patrick county
must be reversed and the bill dismissed.

*Reversed.*