# Wytheville.

## CITY OF RICHMOND v. WILLIAMS & BOWE, TRUSTEES.

### JUNE 16, 1904.

1. LOCAL ASSESSMENTS—*Notice—Owner of Land—Trust Creditors.*—The conveyance of land to trustees to secure the payment of a debt is not regarded as changing the ownership or the status of the land with respect to the proceedings necessary to subject it to taxation, and the creditors secured are not owners of the land within the meaning of a statute requiring notice and opportunity to be heard to be given to abutting owners before a local assessment is made.

2. LOCAL ASSESSMENT—*Tax—Paramount Lien.*—Assessments by municipalities for local improvements are in the nature of a tax, and, when duly and properly made, are superior in dignity to all other liens on the land on which they are assessed.

3. LOCAL ASSESSMENTS—*Case in Judgment—Paramount Lien—Trust Creditors.*—Under an act extending the limits of the city of Richmond, the city was given power to make such improvements within the new teritory as it then had as to property within "its present limits," but provided that no improvement should be made at the expense of abutting owners, "until after allegations have been heard," and assessments for improvements authorized by the act were declared to be liens on the lots abutting on the improvements. An abutting owner who had given a deed of trust on his property made application for certain improvements, which were regularly made in accordance with the terms of the act so far as it affected him personally, but the trust creditors had no notice of the proceeding.

    *Held:* The trust creditors were not "owners" within the meaning of the act, and neither the city charter nor any other law required that notice should be given to them, and that the lien of the city for the improvements made was paramount to their prior deed of trust.

Appeal from a decree of the Chancery Court of the city of Richmond, in an interpleader suit, in which bill was filed by the appellees, Williams & Bowe, trustees, against the appellant and others to determine the ownership of certain funds in the hands, or under the control, of the complainants.

*Reversed.*

The opinion states the case.

*Henry R. Pollard,* for the appellant.

*Leake & Carter* and *L. L. Lewis,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

On the 14th day of October, 1889, C. E. Belvin was the owner in fee of certain real estate, situated in that section adjacent to the city of Richmond known as "Lee District," and on that date he conveyed the whole of said real estate to C. U. Williams and N. W. Bowe, trustees, in trust to secure the payment of the sum of $13,440, evidenced by nine negotiable notes of even date with the deed, which deed was duly recorded in the clerk's office of Henrico County Court on October 17, 1889. On the 19th day of February, 1892, an act of the General Assembly of Virginia was passed (Acts 1891-'2, p. 505), by which the corporate limits of the city of Richmond were extended in such manner that all of the said real estate was brought into the limits of the city; and by deed dated March 14, 1892, recorded in the office of the clerk of the Chancery Court of Richmond city, and in Henrico county clerk's office, Belvin and wife conveyed the same property, described in the deed of October 14, 1889, to H. Seldon Taylor, Charles A. Rose, and M. M. Gilliam, trustees, in trust, to secure certain negotiable notes, all of which

were paid at maturity, except one for $22,800, which has not
been paid in full. This note was held and owned by Charles
R. Skinker, W. M. Walton, and Mary Walton Kent. Default
having been made in the payment of the note of $12,000, se-
cured by the deed of trust to Williams & Bowe, trustees, by
direction of the holders of the note they proceeded under their
deed of trust, on October ———, 1900, to sell enough of the land
to pay the said debt and interest, costs of sale, the execution of
the trust, and to pay the State and city taxes in arrears on the
property. The land left unsold at this sale was not sufficient to
pay the debt still due Skinker 'and others by at least $1,500.
Among the taxes assessed against the property sold by Williams
& Bowe, trustees, in favor of the city of Richmond, was a special
assessment for grading the streets upon which said lands front,
which grading bills so assessed were made under ordinances of
the city of Richmond, passed after the recordation of the trust
deed from Belvin and wife of March 14, 1892, to Taylor and
others, trustees, to-wit: in the years 1892 and 1893, the assess-
ments of said grading bills being made in the years 1897 and
1898, and amounting to $941.22, principal and interest, as of
December 1, 1900. A question having arisen as to whether
Skinker and others holding the lien of the trust deed of March
14, 1892, or the city of Richmond, by reason of its lien for the
grading bills assessed on the property sold by Williams & Bowe,
held a prior lien on said property, Williams & Bowe, trustees,
filed their bill of interpleader in the Chancery Court of the
city of Richmond, making the city, H. Selden Taylor and
others, trustees in the deed of March 14, 1892, and Charles R.
Skinker and others, the holders of the unpaid debt secured by
said deed, parties defendant; and upon the hearing of the cause
upon the bill, the answers of the several defendants thereto, and
a statement of facts agreed by all parties, the Chancery Court
held that the claim asserted by Skinker and others upon the
funds remaining in the hands of Williams & Bowe, trustees,

and deposited by them in the City Bank of Richmond to the credit of the court in this cause, was a superior lien thereon to that of the city for the grading bills in question, and so decreed. It is from this decree that an appeal was taken to this court by the city of Richmond.

The assessments for the grading of the streets through the property of Belvin, upon which the lien of the deed of trust held by Skinker and others rests, were made under sections 3 and 4 of the Act of Assembly extending the corporate limits of the city of Richmond, above referred to, which provides as follows:

"3. The City Council of the said city may make such improvements within said territory as it now has the power as to the property within its present limits; but no improvement shall be made at the expense of the abutting owners until after allegations shall have been heard."

And the fourth section contains the provision, that the assessments for the improvements authorized by the act "shall be a lien on such lots until paid," meaning the lots abutting upon the improvements made. The improvements in question here were made in proceedings commenced on the petition of Charles E. Belvin himself, by resolutions of the City Council directing the Committee on Streets of the City Council to hear "allegations" for and against the proposed improvements. A time was fixed by the committee for the hearing of said "allegations," and it is agreed that Belvin was duly served with notice, a reasonable time prior to the hearing given by the committee, and either appeared before the committee and declared in favor of the proposed improvements, or failed to appear or otherwise make protest against them. His petition for the improvements—that is, the opening and grading of the streets through his property—asked that the work should be done under and in accordance with the provisions of the Act of Assembly extending the city limits so as to bring his property within the limits

of the city, of February 19, 1892, *supra,* and the provisions of the charter of the city, as it then stood, and, in a suit instituted by him thereafter, and after the improvements he asked for had been made, he attacked the said act extending the corporate limits of the city as unconstitutional, but it was held by the Chancery Court of the city of Richmond, in which the cause was pending, that he was then estopped to assert the unconstitutionality of the act, and he was denied an appeal from that decree by this court.

A decision of the case turns upon the question, whether or not the appellees, Skinker and others, creditors, secured by the deed of trust above mentioned, are *owners* within the meaning of the Act of February 19, 1892, and entitled to notice and an opportunity to be heard before the assessments in question upon the property of Belvin, upon which their debt was secured, became final and constituted a lien upon the property?

It may be said in the outset that the custom and form of procedure in the levying of an assessment upon lots abutting upon a street improved, to meet the costs of such improvements, has not, so far as we have been able to ascertain, recognized the right of a deed of trust creditor to notice and an opportunity to be heard before an assessment is made upon lots abutting on the improvements.

When the Act of February 19, 1892, *supra,* was passed, the Council, by the charter of the city as it then stood, was expressly authorized to make improvements of streets by grading, paving, etc., at the expense, in whole or in part, of abutting owners, and was further invested with the power to collect the cost of such improvements by the same processes which it was authorized to use to collect taxes. Acts 1869-70, p. 120. And, by ordinance of the Council, it was expressly provided, that "all amounts which hereafter become due and payable to the city by *property owners* by and on account of any paving, grading, sewers, sewer connections and other improvements made

by the order of the Council are to be collected as and in the manner prescribed for the collection of city taxes." City Code 1885, pp. 172-3.

The contention that a lienor by deed of trust, or otherwise, is to be recognized or dealt with, in the assessment of taxes, finds nothing to sustain it in the statutes providing for the assessment and collection of taxes for general purposes. By an examination of the statute—chapter 24 of the Code—and other statutes *in pari materia,* it will be seen that in the assessment of lands with a tax, the owner, that is, "the person who by himself or his tenant has the freehold in possession," is alone dealt with or recognized as entitled to notice of the proposed tax. The conveyance of land to trustees to secure the payment of a debt is not regarded as changing the ownership or the status of the land, with respect to the proceedings necessary to subject it to taxation. Section 459 of the statutes provides for the making out by the clerks of the courts of lists of all deeds of conveyance of land admitted to record in the office of such clerk, during the current year, which is to be furnished to the commissioner of the revenue for the proper transfer of lands from the grantor in such deeds to the grantee, but that section expressly requires that such list *shall not include deeds of trust or mortgages made to secure debts.* It is only by express provision of the statute and of the charter of the city of Richmond, or its ordinances relating to the redemption of real estate delinquent for State or city taxes that "any person having the right to charge such real estate for a debt" may redeem.

In *Thomas* v. *Jones,* 94 Va. 756, 27 S. E. 813, it was held that a lien for taxes is superior to a vendor's lien, and in *Stevenson* v. *Henkle,* 100 Va. 591, 42 S. E. 672, it was expressly decided that *"a lien for taxes assessed on land is superior to a prior deed of trust to secure the payment of money."* It is well settled that assessments to meet the costs of local improvements are made under the taxing power, and that the statute under

which it is proposed to make such an assessment must provide
for reasonable notice to the "owner" of the land to be assessed,
and an opportunity to appear before a designated tribunal and
have a hearing for or against the assessment at some stage in
the proceedings before the assessment becomes final. It must
also be made to appear that such notice and hearing has been
given him, to contest the legality, justice and correctness of the
assessment before it is finally determined upon, otherwise the
requirement of "due process of law" would not be met, and
the assessment would be void. This is the law as laid down
repeatedly by this court and by the Supreme Court of the
United States, the latest decision of this court being in *Adams*·
v. *City of Roanoke, ante* p. 53, 45 S. E. 881, and one of the
latest by the Supreme Court of the United States is *Voight* v.
*Detroit,* 184 U. S. 115, 22 Sup. Ct. 337, 46 L. Ed. 459.   In
neither of these cases, nor in the cases they cite and review, is
there anything to be found that sustains the contention that a
deed of trust creditor, or mortgagee, is to be regarded as an
*"owner of the land,"* to whom notice and an opportunity to be
heard is to be given as to a proposed assessment to meet the
costs of local improvements. In the later case of *Turpin* v.
*Lemon,* 187 U. S. 51, 23 Sup. Ct. 20, 47 L. Ed. 70, when re-
ferring to proceedings for the imposition of *special taxes* for
local improvements, practically the same expression is used,
viz: that, in proceedings for the imposition of *special taxes*
for local improvements, notice to the *owner* at some stage of the
proceedings, as well as an opportunity to defend, is essential.
It is true that this court has said, in *Chapman* v. *Chapman,* 91
Va. 397, 21 S. E. 813, 50 Am. St. 846, and in other cases, that
trustees in a deed of trust and the creditors secured are regarded
as purchasers for a valuable consideration, but it is not thereby
meant that they become the *owners* of the land conveyed.
"They," as was said in *Williams* v. *Lord & Robinson,* 75 Va.
404, "acquire title to the security of the deed of trust, and

stand in the attitude of *bona fide* purchasers of this," but this, we repeat, does not make them owners of the land conveyed within the contemplation of the statute authorizing the imposition of a general tax, or of a statute authorizing an assessment of a special tax to meet the cost of local improvements, and requiring notice, etc., as to the assessment proposed. If they are to be so regarded, why not a judgment creditor or one holding a mechanic's lien, or any other lien, upon the property benefited by a local improvement? Assessments for local improvements proceed upon the theory of peculiar benefits conferred upon the persons liable to the assessment in the enhancement of the value of their property by the improvements, and the enhancement of the value of the property upon which a debt is secured cannot be considered as the taking of the property of the creditor in any sense.

"In the assessment of a general tax, the law does not regard the different interests in the assessment. It looks to the person having the present right of enjoyment of the land to be assessed, whether tenant for life or years, for the tax on the fee simple value of the land, and such person is the one to be assessed with the land." *Burroughs on Taxation,* 223.

"As a general rule, taxes are imposed upon the owner or person in possession of real estate, as a whole or as one entire interest, without reference to the particular estates or interests in the property. The land being charged with the taxes, all claims and pretentions must yield to such charge, and all persons must take notice." 25 Am. & Eng. Enc. of L. (1st Ed.) 122.

"The word 'owner' includes any person who has the usufruct, control, or occupation of the land, whether his interest in it is an absolute fee, or an estate less than a fee." 17 Am. & Eng. Enc. of L. (1st Ed.) 299-300. See also note to above text on p. 301, where it is said upon authority of a number of cases cited, that the "owner" or "proprietor" of a property is the

person in whom (with his or her assent) it is for the time being beneficially vested, and who has the occupation, or control, or usufruct, of it—*e. g.,* a lessee is, during the term, the owner of the property demised.

In *City of Norwich* v. *Hubbard,* 22 Con. 587, the same contentions were made that are made in the case here under review, but it was held otherwise, the opinion saying: "A mortgagee out of possession is not the proprietor of the mortgaged premises, and in common parlance was never spoken of as such. Nor is he to be so recognized in a legal sense. . . . In truth the mortgagee has only a lien, and cannot be considered or treated as a proprietor or owner of the mortgaged estate." This view is corroborated by analogous cases. In laying out new highways, either by select-men or by the county courts, or in repairing old ones, no provision is made by law for notice to be given to mortgagees, nor, in practice, is this ever done. The interests of mortgagees are not regarded in these proceedings. They are necessarily connected with the interests of the mortgagor, and, in this respect, subject to them. However reasonable we may believe it to be, that a mortgagee should, by a timely notice, have an opportunity of protecting his rights, which the mortgagor has neglected, yet, as neither the charter of the city, nor any other law, has provided for this, we cannot require it, without the exercise of powers which we do not possess. It is sufficient, in order to create and enforce this lien (an assessment for a local improvement) that the city has done everything required of it by the charter and the law." To the same effect is the similar case of *Schumacker* v. *Toberman,* 56 Cal. 508.

It is the property, primarily, that is taxed for local improvements, not the individual. *Asberry* v. *City of Roanoke,* 91 Va. 562, 22 S. E. 360, 42 L. R. A. 636, and authorities cited.

In *Osterberg* v. *U. T. Co.,* 93 U. S. 424, 23 L. Ed. 964, it is held that "A lien for taxes does not stand upon the footing of an ordinary incumbrance, and, unless otherwise directed by

statute, it is not displaced by a sale of the property under a pre-existing judgment or decree."

There is nothing in the case of *Morey* v. *City of Duluth,* 75 Minn. 221, 77 N. W. 829, so much relied on by appellant, that is opposed to the view we take of the case at bar. It is true that the Supreme Court of Minnesota, in construing the charter of the city of Duluth, under review and under which an assessment upon land had been made for local improvements, held that mortgagees were included in the terms "persons interested" and "owner," *as used in the charter,* and had the right to appear and oppose the confirmation of the assessment and the entry of the judgment therefor, but it was also held that they had in that case failed to do so, they were concluded thereby, and the lien of the judgment was upheld as a lien paramount to the title or claim of the mortgagees. In other words, the effect of the decision is merely that under the peculiar phraseology of the city's charter all "persons interested" in the assessment, as well as the "owner" of the property proposed to be assessed, are given the right to appear at the hearing on the application for confirmation of the assessment, and it was the duty of the court to hear them. The opinion in the case fully refutes the contention that is made in this case, viz.: that the lien of an assessment for local improvements cannot be upheld as a prior lien on the property upon which the assessment is made, unless expressly made so by statute. It says:

"It is true, as claimed by plaintiff, that the lien of the assessment attaches at a time fixed by the charter, that is: from and after the time of the confirmation of the assessment roll and filing thereof; but this does not justify the conclusion that the lien is subordinate to all prior liens on the land, although the charter does not expressly declare that the lien of the assessment is paramount to all other liens.

"When the several provisions of the charter to which we have referred are read and considered together, it is clear that the

only reasonable construction which can be given to them is
that the lien of the assessment, when it once attaches, affects all
interests in, or liens upon, the property without reference to the
time when they are acquired. Therefore the assessment is the
paramount lien on the property precisely as if the assessment
were a general tax. Any other construction would practically
defeat the whole scheme for local improvements provided for
by the charter. The Legislature had the undoubted power to
so make the assessment the paramount lien.. *Provident Insti-
tution for Savings* v. *Jersey City,* 113 U. S. 506, 5 Supt. Ct.
612, 28 L. Ed. 1102.

"The proceeding authorized by the charter to charge land with
the cost of local improvements to the extent of benefits received
therefrom is one *in rem.* It is the whole interest in the land
that is assessed for the improvement, not some particular estate
therein. The improvement is for the benefit of all interests in
the land, for that of the lienholder as well as that of the fee
owner, and necessarily the lien of the assessment for the im-
provement must be co-extensive with the estate benefited and
assessed. 2 Blackwell, Tax. Tit., sec. 695. If the land is sold
under the judgment, the whole estate and interest of all parties
therein passes to the purchaser, subject to the right of redemp-
tion, and the deed is made *prima facie* evidence of title in the
grantee. The title conveyed by the deed is the whole interest
in the land, not simply that of the fee owner.

"It is true that liens of the class to which assessment liens
belong are purely statutory, and that their existence and extent
depend on the statute. But our construction of the charter is
that it does, by necessary implication, provide that the lien of
the assessment on the property benefited by the improvement
shall be paramount to all other interests therein, including prior
mortgages or other liens thereon."

The cases of *Sherwood* v. *City of Lafayette,* 109 Ind. 411,
10 N. E. 89, 58 Am. Rep. 414, and *The State, &c.* v. *Insurance*

*Co.,* 117 Ind. 251, 20 N. E. 144, also relied on as sustaining the view of the lower court in this case, are not applicable. The first named was a condemnation proceeding, and all that was decided is that the mortgagee and not the mortgagor and owner in fee of the land taken for a street was entitled to the damages awarded, although the amount had already been paid to the mortgagor. In the second named case, the court was dealing only with the question, whether the lien of a drainage assessment levied under a statute of the State of Indiana is junior to the lien of a pre-existing mortgage, and reviewing briefly the statute held merely that it was, as the Legislature had not by express terms given the lien of the assessment priority over pre-existing mortgages.

The process of taxation does not require the same kind of notice as is required in a suit at law, or even in proceedings for taking private property under the power of eminent domain. "It involves no violation of due process of law when it is executed according to customary form and established usages, or in subordination to the principles which underlie them." *Turpin* v. *Lemon, supra,* and authorities cited.

In *Stevenson* v. *Henkle, supra,* referring to the cases of *Simmons* v. *Lyle,* 32 Gratt. 752; *Com.* v. *Ashlin,* 95 Va. 145, 28 S. E. 177, and *Thomas* v. *Jones, supra,* as holding that a tax lien is superior in dignity to judgment liens, and to the vendor's lien, and in fact "prior in dignity to all other liens," the opinion by Harrison, J., well says, that if this were not the law, "the liens upon the land, as in this case, would often be greater than the value of the land, and the tax lien being inferior, the land would escape all taxation." The principle that a tax lien is superior in dignity to all other liens upon the land on which it is assessed, upheld by the foregoing authorities, must, upon reason as well as authority, be extended to assessments by municipalities for local improvements, which are in the nature of a tax, otherwise the whole scheme for local im-

provements provided for in the charters of the several cities and towns in this State, would be, as said in *Morey* v. *City of Duluth, supra,* "practically defeated," since such improvements might be completely prevented by a mortgage or deed of trust on property equal to the value of the property.

Upon the whole case, we are of opinion that the decree appealed from, holding that "the paving bills of the city of Richmond mentioned in these proceedings are not a valid lien upon the funds deposited in the City Bank of Richmond. . . . to the credit of the court in this cause as against the beneficiaries in the deed of trust from Charles E. Belvin and wife to H. Seldon Taylor and others, trustees, of March 14, 1892," is erroneous, and should be reversed and annulled, and the cause will be remanded to the Chancery Court of the city of Richmond, to be further proceeded with in accordance with this opinion.

*Reversed.*