### WOOTEN v. TEXAS BITULITHIC CO. et al. (No. 9047.)

(Court of Civil Appeals of Texas. Ft. Worth. April 5, 1919. On Motion for Rehearing, May 10, 1919.)

1. MUNICIPAL CORPORATIONS ⬡⟶446 — PUBLIC IMPROVEMENTS—COMPLIANCE WITH CONTRACT.

Though the contract for paving a street called for pavement to the south line of an intersecting street, and the pavement constructed extended only to the north line, held that, as the contract made the charter and ordinances of the city a part thereof, and all of the proceedings by the board of commissioners, etc., showed that the pavement was to extend only to the north line of the intersecting street, the assessment for such paving was not open to attack on that ground.

2. MUNICIPAL CORPORATIONS ⬡⟶294(5) — PUBLIC IMPROVEMENTS—NOTICE OF PROPOSED WORK—MORTGAGEE.

Though no notice of the proposed paving of a street was given a mortgagee, held, that publication in a newspaper of notice of the proposed pavement was sufficient to bind the mortgagee; the city charter, which provided for notice, declaring that service of notice by advertisement should be conclusive.

3. CONSTITUTIONAL LAW ⬡⟶290(1)—MUNICIPAL CORPORATIONS ⬡⟶407(1)—DUE PROCESS OF LAW—PRIORITY OF LIEN FOR IMPROVEMENTS.

Where a city charter provided that on the day fixed for hearing any person owning or having any interest in the property proposed to be assessed for paving should have the right to be heard, held, that the provision of the charter making the lien of paving superior to that of a mortgage was not invalid as working a deprivation of property without due process of law in violation of Const. Tex. art. 1, § 19, and Const. U. S. Amend. 14, § 1.

———

⬡⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

4. MUNICIPAL CORPORATIONS ☞516 — PUBLIC IMPROVEMENTS—ASSESSMENTS—COLLATERAL ATTACK.

Though a city charter provided that any person interested in property assessed for street improvements should not institute suit to contest the validity of the assessment after a time fixed, the assessment can be collaterally attacked where the board of commissioners of the city did not acquire jurisdiction under the charter to levy the assessment.

5. MUNICIPAL CORPORATIONS ☞522—PUBLIC IMPROVEMENTS—ASSESSMENTS—VALIDITY—PAYMENT IN INSTALLMENTS.

Where a city charter made it the duty of the board of commissioners to order a street paved whenever the owners of 60 per cent. of the property abutting thereon should present a written petition therefor, and provided that assessment should be paid in five installments, and a petition for paving signed by the owners of more than 60 per cent. was filed, the board of commissioners cannot disregard it, and, acting under their general authority, order improvement and provide for payment of the assessment within 30 days after acceptance of the work.

6. MUNICIPAL CORPORATIONS ☞443 — PUBLIC IMPROVEMENTS — ASSESSMENTS — VALIDITY.

Where an assessment for street paving was invalid ab initio because the board of commissioners of the city attempted to act under their general authority without following the provisions applicable because property owners had petitioned for the improvement, the fact that act of the board did not prejudice one holding a mortgage on abutting property *held* not to validate the assessment.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

Suit by the City of Ft. Worth for the use and benefit of the Texas Bitulithic Company against Joe S. Wooten, executor and others. From a judgment for plaintiff, the named defendant appeals. Reversed and rendered in part, and undisturbed in part.

Robert G. Johnson and Carl W. Wade, both of Ft. Worth, for appellant.

T. J. Powell, of Ft. Worth, L. M. Dabney, of Dallas, and W. W. Wilkinson, of Ft. Worth, for appellees.

DUNKLIN, J. Joe S. Wooten, as executor of the last will and testament of Mrs. H. G. Wooten, deceased, has appealed from a judgment rendered in favor of the city of Ft. Worth for the use and benefit of the Bitulithic Company foreclosing a lien upon a lot on Eighth avenue in the city of Ft. Worth for paving done by that company on the street abutting said lot. This is the second appeal in this case. The disposition of the former appeal appears in 196 S. W. 601.

The paving was done by the Texas Bitulithic Company under a contract with the city, and after it was completed the city, acting through its board of commissioners, issued a paving certificate in favor of the company for the sum of $417.50, which was the amount assessed by the city against Mrs. E. C. Florence, who owned the lot in controversy, and the amount so assessed was declared to be a lien on said lot. Mrs. Florence was also made a defendant, and a personal judgment was rendered against her for the balance due on the certificate, and the foreclosure of the lien decreed was against her, and also against R. I. Craig, who was likewise made a defendant upon an allegation that he was claiming some interest in the property, but neither of those two defendants has appealed from the judgment so rendered.

The trial was before a jury, who, in answer to a special issue, found that the lot had been enhanced in value in the sum of $500 by reason of the paving done by the paving company.

The contract for the paving was let by the city to the paving company on May 3, 1910. On November 8, 1910, the city engineer reported to the board of commissioners of the city that the paving had been done in strict compliance with the terms of the contract and the specifications adopted by the city, and he recommended that the improvement be finally accepted by the city, which was done on December 20, 1910, at which time the paving certificate sued on was issued. All proceedings by the board of commissioners relative to said paving were done under and by virtue of a special charter granted to the city of Ft. Worth by the Legislature of Texas.

On June 9, 1910, one month and three days after the paving contract was let, Mrs. H. G. Wooten, acting through Robert G. Johnson, her agent and attorney in fact, loaned $1,200 to Mrs. E. C. Florence, the owner of the property in controversy, who then and there secured the loan by a deed of trust on the property of even date with her note evidencing the loan, and which deed of trust was duly filed for record in the records of deeds and mortgages of Tarrant county on June 13, 1910, four days after said loan was made. Neither Mrs. Wooten nor her agent and attorney had any actual notice that said paving contract had been entered into or that any steps had been taken to pave the street in front of the property, and none of the proceedings relative to fixing a lien on the lot for said paving were ever recorded in the records of deeds and liens of any character for Tarrant county.

The initial step for the paving in controversy was taken on April 5, 1910, by the owners of the property abutting on the street that was paved, who upon that date filed a

petition to the city commission asking that Eighth avenue between Weatherbee and Morgan streets be paved, and the petitioners owned 85 per cent. of the property abutting on that portion of the street sought to be paved. On April 12, 1910, the board of commissioners passed a resolution ordering that portion of the street named in the petition to be paved and directing the city engineer to prepare and file with the board of commissioners specifications for the paving, and invited bids for the work to be done, but the resolution so passed did not mention or in any manner refer to the petition that had been filed by the property owners asking that the paving be done. The Texas Bitulithic Company was the successful bidder for the work to be done, and entered into a contract therefor which was approved and accepted by the board of commissioners, and which contract contained, among others, the following provisions:

"That the improvements hereinafter referred to shall be laid and constructed by the contractor on the following streets and thoroughfares in the city of Ft. Worth, to wit: Eighth avenue from the south line of Weatherbee street to the south line of Morgan street. * * *

"It is understood and agreed that this contract is entered into with reference to the existing charter and ordinances of the city of Ft. Worth, which are hereby made a part hereof, in so' far as the same may be applicable. * * *

"That the proportion of the cost of such improvements which shall be payable by the owners of property abutting on said street shall be paid to the contractor within 30 days after completion of the improvements in front of the property of such owners and shall bear interest from date of completion at the rate of 8 per cent. per annum, and that the amounts to be paid by each owner of property abutting on said street shall be secured by a lien upon said property and a personal claim of liability against the owner thereof."

By the resolution passed accepting said bid and contract the board ordered the certificate for the paving to be issued, fixing maturity of the certificate at 30 days from and after November 8, 1910, that date being recited as the date of the completion of the work, and the certificate was made to draw interest at the rate of 8 per cent. per annum from its date, and it was declared to be a lien upon the property, in accordance with the provisions of section 9, c. 14, of the city charter; and according to that provision of the charter the lien so created was made superior to all other liens or deeds except lawful taxes.

[1] It will be noted that the contract for paving described the street to be paved to begin with the south line of Weatherbee street and to extend to the south line of Morgan street, while the order for paving and all other proceedings had relative to such described the property as beginning with the south line of Weatherbee street and extending to the north line of Morgan street, and the proof was conclusive that that only was the portion of the street paved. It thus appears that the contract for paving included a strip from the north line of Morgan street to the south line of Morgan street which was never paved, and by his first assignment of error appellant insists that no foreclosure of the lien could properly be decreed, because the paving company did not fully comply with its contract. It is a familiar rule that, in order to fix such a lien as is here claimed, the statutory requirements must be strictly followed. We are of the opinion, however, that there is no merit in the assignment, since the contract for paving expressly referred to the charter and ordinances of the city, which were made a part thereof in so far as the same were applicable, and since the board of commissioners never authorized the paving of the strip between the north and south boundaries of Morgan street, and since all of its proceedings relative to the paving, including the acceptance of the work done, referred to that portion only of Eighth avenue lying between the south boundary of Weatherbee street and the north boundary of Morgan street. Under such circumstances the most that can be said is that there was an ambiguity in the contract for paving, and the trial court was authorized to adopt the construction which made it applicable to that portion of Eighth avenue between the south boundary of Weatherbee street and the north boundary of Morgan street.

[2] By section 8, c. 14, of the charter it is provided that, in order to bind the owner of any property by the board of commissioners determining the necessity of assessing any part of the cost of the paving against his property, it shall be necessary to publish a notice of such order in some newspaper published in the city for five consecutive days, and also by posting in the post-office of the city a copy of such notice to the owner. But it further provided that "service of said notice by advertisement shall be conclusive and binding whether service by posting shall be had or not, the latter being merely cumulative."

Upon the trial it was agreed that notice of the order declaring a necessity for the paving was not mailed to Mrs. Wooten nor to any agent for her, but that the notice required by the charter was published in a newspaper in the city for the period of time required.

We are of the opinion that such publication of the notice was sufficient to bind Mrs. Wooten if the order was otherwise effective to create a lien upon the property in favor of the holder of the certificate sued on. 2 Page & Jones on Taxation by Assessment, §§ 748, 760; Richmond v. Williams, 102 Va. 733, 47 S. E. 844.

[3] By another assignment it is insisted that, if by section 8, c. 14, it was intended that a lien for paving can be made superior to a prior mortgage lien duly recorded, under such proceedings as were taken by the board of commissioners in the present instance then the same would be in violation of article 1, § 19, of the Constitution of Texas, and article 14, § 1, of the Amendments to the Federal Constitution, in that it would have the effect of destroying or injuriously affecting the mortgage lien without due process of law. In the section of the charter referred to it is expressly provided that on the day fixed for hearing any party owning or having any interest in the property proposed to be assessed with any part of the cost of the paving shall have the right to be heard, and upon such hearing to present any objection to such assessment or the making of such improvement, and the right to urge any reason showing the invalidity or irregularity in the proceedings relative to such improvement. In view of that provision, and upon the authority of Storrie v. H. C. St. Ry. Co., 92 Tex. 129, 46 S. W. 796, 44 L. R. A. 716, the assignment now under discussion is overruled.

[4-6] By section 14, c. 14, of the city charter it is made the duty of the board of commissioners to order a street paved whenever the owners of 60 per cent. of front feet of property abutting on the street shall present a written petition therefor. And it is provided that, whenever paving is ordered upon such a petition, the cost shall be payable by assessments against the property owners in five equal installments, the first of which shall be due 30 days after the completion and acceptance of the improvement by the city, and the remainder in four annual installments thereafter, bearing interest at not to exceed 8 per cent. per annum, and that default in payment of any installment of the principal or interest when due shall, at the option of said city or its assigns, mature all unpaid installments. By section 5 of the same chapter of the charter power is vested in the board of commissioners upon their own initiative to order the paving of any of the public streets of the city, and in such event to prescribe that the amounts assessed against the property owners may be paid in not to exceed three installments payable in not more than three annual payments next after the completion of the improvement; such assessments drawing interest at the rate not to exceed 8 per cent. per annum. It thus appears that, if the paving is done upon the initiative of the board of commissioners, that board may, at its discretion, make the assessments mature at any time within the limitations stated, and may provide that the entire assessment may be made payable in one installment, if they see fit so to do.

Appellant insists that the record shows that the paving in controversy was ordered upon the written petition filed therefor, and that, since the entire assessment against the property in controversy was made payable in a single installment, evidenced by the certificate sued on, payable in 30 days after the completion of the work, said assessment was in violation of the terms of the charter, and therefore illegal and void. As noted above, the order passed by the board of commissioners, which was made seven days after the petition for paving the street was filed by the owners of the property abutting thereon, did not in terms approve the petition, and did not refer to it in any manner; neither did it contain any recital showing that the board of commissioners, in ordering the paving to be done, was acting upon its own initiative. The order begins as follows:

"Be it resolved by the board of commissioners of the city of Ft. Worth, Texas, that the following streets and avenues of the city be paved and improved within the following limits, to wit: Eighth avenue from Weatherbee street to Morgan street."

Section 5, c. 14, of the charter, which vests in the board of commissioners the power to make public improvements in the city upon its own motion, reads in part as follows:

"The board of commissioners shall have the power by resolution to order the making of such public improvements, or any of them, by a majority vote, without notice, and the passage of such resolution shall be conclusive of the public necessity and benefits thereof."

Appellee insists that it conclusively appears that the board of commissioners acted upon its own motion, and not upon the petition of the property owners, since the entire assessment was made payable in a single installment 30 days after the completion of the work, contrary to the requirements of the charter when the paving is ordered in compliance with the petition of the property owners. We sustain the contention of the appellee.

Upon the face of the proceedings it appears that the board of commissioners ignored the petition of the property owners to have the street paved, and in ordering such paving done acted upon their own motion. But we are of the opinion that in so doing the board exceeded its jurisdiction, and for that reason its order so made was void. The decision of our Supreme Court in the case of Haverbekken v. Hale (Sup.) 204 S. W. 1162, and the reasoning there advanced are controlling upon this question. That was a suit to restrain by injunction the opening of a public road in compliance with an order of the county commissioners' court made upon a petition of freeholders of the county, but the requisite number prescribed by the statute did not sign the petition. On appeal of the case to this court a majority of the court held that, since by article 6871

of the Statutes the commissioners' court had the power upon their own initiative to order the opening of such a road, the order for it to be opened should be sustained even though the petition upon which they acted had not been signed by the required number of freeholders. But that decision was reversed by our Supreme Court, which held that, as articles 6875 and 6876 gave the right to freeholders to present a petition for the opening of the road, the filing of such a petition before the commissioners' court had seen fit upon its own motion to order the road opened deprived the court of the jurisdiction to open the road upon its own initiative, and that, as the court was without jurisdiction to make it, the order was void. The decision was based upon the following reasons, which seem to us sound and irrefutable:

"Article 6860 does not of itself, in our opinion, confer upon the commissioners' court any authority to open a new road of its own motion. Article 6871 does confer such authority. It relates to a condition where the court may act of its own accord. Articles 6875 and 6876 relate to another condition where it is contemplated that the court shall not act except upon the petition of a required number of freeholders. The theory of article 6871 doubtless was that under certain necessities the court should be free to lay out new roads or straighten existing ones of its own initiative. But it was clearly not intended that in all cases it should so act. To ascribe such an intention to the Legislature is to impute to it no purpose whatever in its enactment of articles 6875 and 6876. It renders them vain and meaningless. There could be no reason for writing their provisions into the statute law unless it was plainly contemplated that, while the court might proceed upon its own motion, yet, where it had not done so, its power was subject to be invoked upon petition. They furthermore make it plain that, when the court's jurisdiction is thus invoked, it is without the power to act except upon a substantial compliance with their requirements."

By section 10, c. 14, of the city's charter it is provided:

"Any person interested in any property assessed for such improvements, or against whom any charge of personal liability may have been fixed, may, within ten days from the conclusion of the hearing above referred to, but not thereafter, institute suit in any court having jurisdiction for the purpose, on any ground, of testing the validity of said assessment or personal liability, and the validity of any proceeding had with reference thereto; but if said action be not brought within said period of ten days, then said persons, their heirs, successors, assigns, or personal representatives, shall be forever barred from asserting any defect in such proceedings or any invalidity in said assessment or charge of personal liability, in any action in which the same may thereafter be brought into question."

But that provision does not bar even a collateral attack at any time upon any as-sessment made in any case where the board of commissioners does not acquire jurisdiction under the provisions of the charter to make it. The rule applicable to proceedings by such a board is stated in 2 Page & Jones on Taxation by Assessment, § 1337, as follows:

"If, by statute, certain objections to the assessment proceedings are to be made at certain specified stages of the proceedings, a property owner who does not make such objections at the time specified cannot interpose such objections as defenses in an action to enforce the assessment, if the objections interposed do not affect the jurisdiction of the public corporation to levy the assessment. If the objection really goes to the want of power of a public corporation, or to its jurisdiction, failure to object does not waive such objection. Thus, if the property owner is required to take an appeal in order to preserve his rights, such appeal is not necessary if the proceedings are void on their face, and failure to appeal does not prevent him from setting up such defenses subsequently."

See, also, sections 1358 and 1359, which are to the same effect.

The reasoning advanced in the Haverbekken Case applies with even greater force here, in view of the fact that, if paving is done upon the petition of owners of property abutting on the street to be paved, their respective assessments for the cost of paving, instead of being made payable all in a lump sum 30 days after completion of the work, must be divided into five equal installments, one of which shall mature within 30 days, and one each year for 4 years thereafter, which liberal terms of payment constitute a valuable right to the property owners. And it would be unreasonable to say that, after the jurisdiction of the board of commissioners has been invoked to grant that right, the petition may be arbitrarily ignored by action under the provisions of section 5, c. 14, of the charter referred to above, to the destruction of the right accorded to the property owners by section 14, c. 14, of the charter, to more liberal terms of payment. And, as said by our Supreme Court in the Haverbekken Case, the enactment of section 14 would have been meaningless if it had been intended that the board could thus ignore and render it inoperative at its pleasure.

Nor is it any answer to the foregoing conclusion that appellant has suffered no injury by reason of the fact that more than 7 years had expired after said assessment was made before the case was tried and judgment rendered. Even though it could be said that the course pursued by the board was more advantageous to the property owners than the proceedings prescribed in section 14, c. 14, of the charter, that fact could not validate an assessment that was void ab initio. Allen v. Galveston, 51 Tex. 302; 2

Page & Jones on Taxation by Assessment, § 777. Plaintiff's suit was based solely upon the paving certificate issued by the board, and, unless that certificate was valid, it follows, of course, that a recovery must be denied irrespective of the enhancement of the value of the property by reason of the improvement.

The record shows that subsequently to the pavement of said street Mrs. E. C. Florence sold the property in controversy to defendant R. I. Craig, and thereafter the lien of Mrs. Wooten was foreclosed by sale by the trustee named in the deed of trust in accordance with the terms of that instrument, and that at such sale Mrs. Wooten bought the property, and her estate is now the owner thereof.

Since the action of the board of commissioners in ordering the assessment in controversy was void for the reason that the board never acquired jurisdiction to make it, the judgment of the trial court foreclosing the plaintiff's alleged lien against the lot in controversy is reversed, and judgment is here rendered denying such a foreclosure and decreeing that the estate of Mrs. H. G. Wooten, deceased, and Joe S. Wooten, as executor of said estate, is vested with title to said lot free of said alleged lien.

The personal judgment rendered in plaintiff's favor against Mrs. E. C. Florence for the amount of the assessment as evidenced by the certificate sued on, from which she has not appealed, is left undisturbed.

Reversed and rendered in part, and undisturbed in part.

### On Motion for Rehearing.

The petition filed by the property owners for paving the street referred to in our original opinion was as follows:

"Ft. Worth, Texas, March 27, 1910. "To the Honorable Mayor and Board of Commissioners of the City of Ft. Worth:

"The undersigned property owners along 8th Ave., between Weatherbee and Morgan Sts. in the city of Ft. Worth, hereby petition your honorable body to order the pavement of 8th Ave., between the above-mentioned streets, with bitulithic pavement, and each of us do hereby agree to pay for the pavement of one-half the street in front of our respective property. We request that this portion of 8th Ave. be made uniform in width with that portion of 8th Ave. immediately north of Weatherbee street.

"I. C. Chase, 80 ft. "J. M. Long, 80 ft. "J. I. Turner, 50 ft. "W. H. Word, 100 ft. "Geo. W. Armstrong, 63 ft. "F. E. Whitsell, 100 ft. "L. M. Burkhart, 100 ft. "I. N. McCrary, 65 ft."

That part of the street that was paved was 400 feet on one side and 360 feet on the other, or a total of 760 feet counting the frontage on both sides. The number of front feet owned by the signers of the petition and situated partly on one side of the street and partly on the other aggregated 638 feet, or 83 per cent. of the entire both sides frontage of the paved part. The agreement of each owner to pay one-half of the cost of the entire pavement in front of his property was an agreement to pay for the paving to the middle of the street, and such agreement by the owners on both sides covered the whole. Furthermore, the agreement to pay the cost of paving would include the cost of excavations, grading, and other necessary incidents to the work of the paving. The designation by the petitioners of the kind of paving desired as "bitulithic" pavement was in strict compliance with section 14, c. 14, of the city charter. With these additional findings of fact, the motion of appellee for further findings and for a rehearing are both overruled.