93 U.S. 424
 23 L.Ed. 964
 OSTERBERG
v.
UNION TRUST COMPANY.
 October Term, 1876
 
 APPEAL from the Circuit Court of the United States for the Northern District of Illinois.
 The Rockford, Rock Island, and St. Louis Railroad Company issued certain bonds secured by its mortgages to the Union Trust Company, the trustee of the bondholders. The trustee filed its bill to foreclose the mortgages, June 11, 1874, in the court below; and on the 29th of the following October a receiver was appointed to take charge of the money, real and personal assets of the company, and all its rights and property, with power to exercise its franchises, and, if need be, to sell, transfer, and convey, under the direction of the court, the whole or any part of the property; and it was further ordered, that the company and Lynde and Cable, or whoever may have possession thereof, do assign and deliver to the receiver the property, and all equitable interests, things in action, and other effects belonging to or held in trust for the company, or in which it had any beneficial interest, right, or title, at the time of filing the bill. The deed executed by the company pursuant to that order transfers to the receiver 'all and every the estate, real and personal, chattels real, moneys, outstanding debts, things in action, equitable interests, property, and effects whatsoever and wheresoever, of or belonging or due to, or held in trust for, the said railroad company, or in which it had any interest, right, or title, at the time of filing the bill of complaint.'
 The receiver took possession of the property, and operated the road. On July 11, 1875, a decree was rendered finding the amount due the bondholders, and directing the sale of the road and of certain real estate, specifically described, and of 'all rights, claims, and benefits in and to all leases, contracts, and agreements made with any parties owning any coal lands, or mineral lands, or railroad or railroads, or with any other parties for any other property, together with all and singular the tenements and appurtenances thereto belonging, and the reversions, remainders, tolls, incomes, rents, issues, and profits thereof; and also all the estates, rights, titles, and interests whatsoever, as well at law as in equity, of the said Rockford, Rock Island, and St. Louis Railroad Company, of, in, and to the same; . . . and all other property, real and personal, belonging to said Rockford, Rock Island, and St. Louis Railroad Company, and which is now in possession of said receiver, and hereinafter described or referred to; and all other property, rights, franchises, and things which shall have been acquired by purchase or otherwise, by the said receiver, during the pendency of this suit for use in connection with said railroads, and shall be at the time of the sale hereby decreed in his possession, or to which he may then be entitled.'
 The master appointed by the court sold the said road, franchises, &c., Aug. 16, 1875; and, when offering it, publicly declared, 'I am ordered by the court to say, that from the proceeds of the sale will be retained a sum sufficient to provide for the taxes of 1873 and 1874.'
 The appellant became the purchaser of the property for the sum of $1,320,000, and paid in cash, conformably to the order directing the sale, $200,000. On the 3d of November, 1875, the court, upon the report of the master, made a further order, directing that the appellant be let into possession on the payment of an additional sum of $350,000, and the delivery of coupons and bonds of a specified amount, he to have the earnings of the road and to pay its expenses after Nov. 1 of that year; but the court decreed, that, on the payment by the appellant of the residue of the purchase-money on or before Dec. 5, 1875, the sale should be confirmed, and that the appellant might apply to the master under the direction of the court for a deed conveying to him the property purchased at the sale. He took possession accordingly on the 9th of that month. On the twenty-eighth day of January, 1876, an order was made extending the time for the payment of the residue of the purchase-money until the 1st of April; and on May 27 of that year an order was made confirming the sale and directing a conveyance, which was carried into effect.
 The receiver continued to act until July 26, 1876, when he was discharged from his trust. In his formal report of that date, he states that he had in his hands four bonds of the United States, of $1,000 each, on which he had collected interest amounting to $133.80, and the further sum of $1,395.72, which bonds and money he had received from Henry Curtis, Jr., and the sum of $2,000, which he had received from Cornelius Lynde, and that from the earnings of the road there remained in his hands the sum of $7,417.13. These moneys and the bonds were paid into the hands of the clerk of the court. The taxes on the property for 1875 were not paid by the receiver. The moneys and bonds received from Curtis and Lynde were held by them in trust, and were obtained in the following manner:——
 Before the bill to foreclose was filed, several judgments had been recovered against the company, from which it desired to appeal, and Lynde and Curtis, at its instance, became security upon the appeal-bonds. For the purpose of indemnifying them, certain lands, covered by said mortgages, were conveyed to Curtis, and certain moneys, the earnings of the road, were deposited with him and Lynde before the commencement of the suit to foreclose. By the authority of the company, Curtis sold a part of said lands, and converted a part of the moneys into government bonds. Such of the lands as were not sold by him were sold under the decree by a specific description. The lands which had been sold by Curtis were not mentioned or described in the decree, or in the advertisement of sale. The judgments were reversed, or otherwise settled and disposed of; and the property thus held by Curtis and Lynde was released, and they were discharged from their trust about the month of May, 1876, whereupon they delivered to the receiver the bonds and money above mentioned, and Curtis conveyed to him the unsold lands. All the land sold by Curtis was sold before the commencement of the foreclosure suit, and the only money received by him thereafter was for rents and interest. The lands not sold by him were conveyed under the order of the court to the appellant, as the purchaser under the decree.
 The appellant, upon these facts, claims that he is justly entitled at law and in equity to the bonds and moneys delivered to the receiver by Curtis and Lynde, and by him paid into court.
 By the statutes of the State of Illinois all taxes are made a lien on the first day of May of each year, for that year. Assessments are made between the first day of May and the first day of July in each year. They are reviewed by the town and county boards, and reported to the State auditor for equalization on or before the tenth day of July. The State Board of Equalization meets on the second Tuesday in August, and within the first ten days of December of each year books and warrants for the collection of taxes are delivered to the collectors.
 The taxes assessed upon said railroad and franchises, and property for the year 1875, amounted to the sum of $23,000 and upwards; and the appellant claims that the said sum of $7,417.13 is legally and equitably applicable in payment of said taxes.
 The court below held that the money and the proceeds of the bonds should, with the other funds in court, be distributed among the creditors, and Osterberg appealed to this court.
 Submitted on printed arguments by Mr. J. R. Doolittle for the appellant, and by Mr. C. B. Lawrence for the appellee.
 MR. JUSTICE DAVIS delivered the opinion of the court.
 
 
 1
 We are unable to perceive that the appellant is entitled to the relief which he seeks.
 
 
 2
 1. The taxes for 1875 were, at the date of the decree, a subsisting lien upon the mortgaged property, and he had not only constructive but actual notice of its existence. It is true that the title of a purchaser at a judicial sale under a decree of foreclosure takes effect by relation to the date of the mortgage, and defeats any subsequent lien or incumbrance. A lien for taxes does not, however, stand upon the footing of an ordinary incumbrance, and is not displaced by a sale under a pre-existing judgment or decree, unless otherwise directed by statute. It attaches to the res without regard to individual ownership, and when it is enforced by sale pursuant to the statute, prescribing the mode of assessing and collecting them, the purchaser takes a valid and unimpeachable title. But if the doctrine were otherwise, and if the rule of caveat emptor had no application to this case, we are not aware of any principle which would justify withholding from the mortgagee any of the moneys derived from the sale of the mortgaged property, with a view to the application of them to satisfy such a lien. This is not a controversy between incumbrancers. It is, in effect, a proceeding by a purchaser at a judicial sale to apply a portion of his bid to the partial discharge of an incumbrance to which he admits that the property in his hands is subject. Even if the law had not imposed on the purchaser the burden of discharging it, the terms of sale, as announced by the master, clearly did so.
 
 
 3
 2. He has no rightful claim to any part of the earnings of the road whilst it remained in the possession of the receiver, nor is he in a position to question the orders of the court, as to the application of those earnings. The road would have been surrendered to him at an earlier date had he punctually complied with the terms of the sale; but the court, under the peculiar circumstances of the case, extended to him an indulgence in making the required payments. In the mean time, the road remained in the custody of the receiver, and its earnings were devoted to the payment of current expenses and other meritorious claims.
 
 
 4
 3. Nor has the appellant a right to the money and government bonds which came to the hands of the receiver from Henry Curtis and Cornelius Lynde. So soon as they were relieved from the trust upon which these persons held them, they belonged in equity to the bondholders. The purchaser could acquire no right to them, as he bought only the property which the decree directed to be sold; and it did not order the sale of this fund, nor did the master attempt to sell it. If the deed of the receiver to Osterberg is broad enough in its language to cover this fund, it is to that extent void, as he was only authorized to convey the property previously described in the decree and sold by the master at the sale.
 
 
 5
 Decree affirmed.