PRESENT: All the Justices

CYGNUS NEWPORT-PHASE 1B, LLC,
ET AL.

                                                          OPINION BY
v. Record No. 151702                          JUSTICE STEPHEN R. McCULLOUGH
                                                          September 22, 2016

CITY OF PORTSMOUTH, ET AL.


FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
William S. Moore, Jr., Judge

We consider two issues in this appeal. First, we examine whether a special assessment

lien has priority over a deed of trust that was recorded before the special assessments were

imposed, or whether the special assessment lien is instead extinguished by the foreclosure of the

deed of trust. Second, we must determine whether the new owners of property subject to a

special assessment lien may have such a lien declared void years after the lien has been agreed to

by the prior owner and after bonds have been issued in reliance on those assessments. We

conclude that a special assessment lien has priority over a deed of trust that was recorded before

the special assessments, and that the belated challenge to the assessments cannot succeed.

BACKGROUND

The prior owner of the property, Portsmouth Venture One, LLC, acquired title on July 22,

2004, to a 176 acre parcel located in Portsmouth, Virginia known as tax parcel number 5240010.

On that same date, the prior owner granted a deed of trust on the property to Bank of America to

secure two notes. The deed and the deed of trust were recorded on August 11, 2004.

The prior owner petitioned the City of Portsmouth for the formation of a community

development authority, or CDA. In 2005, the City acquiesced and enacted an ordinance creating

the New Port Community Development Authority.  The boundaries of the CDA's district included tax parcel number 5240010.

As permitted by the special assessment ordinance, the CDA entered into a Special Assessment Agreement with the prior owner.  The Agreement was signed by the City, the prior owner, and the CDA.  Under the Agreement, the special assessments were to be apportioned and paid each year, and the payments were pledged to repay the bonds.  The prior owner agreed that the special assessment "does not exceed the peculiar benefit to the Assessed Property [including tax parcel number 5240010] . . . resulting from the Improvements" and that successors would be bound by the Agreement.

In January 2006, the CDA adopted a resolution authorizing the issuance of special assessment bonds.  A certified copy of the resolution was filed with the Circuit Court for the City of Portsmouth on May 8, 2006.  The CDA also signed an agreement with the City on February 15, 2006, and the prior owner authorizing an issuance of bonds up to $16,951,000 to fund improvements, including road improvements, utilities, and lighting.

The City enacted an ordinance in February 2006 that established special assessments on properties in the CDA district.  The ordinance designated how the assessments would be apportioned, and imposed the special assessments as a lien on the properties.  The ordinance approved the Special Assessment Agreement.  The CDA docketed an abstract of this ordinance in the circuit court on March 23, 2006.

On April 27, 2006, the prior owner and the CDA signed a Declaration of Notice of Special Assessment, which was recorded in the circuit court on May 4, 2006.  The declaration states that its provisions "shall run with the land (including all improvements thereon) and bind any and all who may now or hereafter own or acquire any right, title, estate or interest in or to

2

any of such property." In this Declaration, the prior owner also stated that the special assessment lien "does not exceed the peculiar benefit to the Assessed Property."

Bonds were issued in May 2006 in the amount of $16,240,000. These bonds are payable from "revenues derived from special assessments levied on taxable property" within the CDA boundaries. Unless retired earlier, some bonds will be outstanding until repaid in 2036.

The CDA placed approximately 75 percent of the proceeds at the disposal of the prior owner, who used the funds to construct infrastructure improvements within the district. From May 2005 to December 2011, the prior owner subdivided tax parcel number 5240010 and sold individual lots.

On December 22, 2011, Bank of America sold the notes it held to Cygnus VA, LLC, and assigned it the deed of trust. Following the prior owner's default, Cygnus VA, LLC instructed the trustee to foreclose on the property. Following a foreclosure sale, Cygnus VA, LLC was the successful bidder. Cygnus VA, LLC conveyed the property to Cygnus Newport, LLC, which in turn allocated the foreclosed property to the current owners.[1]

Cygnus filed the present suit, claiming that the special assessment lien was extinguished by the foreclosure sale. Cygnus also alleged that the special assessments were void because although the parcels acquired through the foreclosure sale are largely unimproved and undeveloped, no CDA bond funds remain to construct additional improvements. Cygnus argued that the special assessments grossly exceeded the peculiar benefits of the improvements to the remaining portion of tax parcel number 5240010, and should be declared "void except to the extent that the peculiar benefit of the abutting [i]mprovements increased the value" of the

---

[1] The current owners are Cygnus Newport-Phase 1B, LLC, Cygnus Newport-Phase 1C, LLC, Cygnus Newport-Phase 2, LLC, and Cygnus Newport-Phase 3, LLC. For the sake of simplicity, we refer to them collectively as Cygnus.

property.  The CDA and the City filed a motion to dismiss, a demurrer, and four pleas in bar.

After briefing and argument, the circuit court issued a letter opinion dated July 29, 2015,

granting the City and the CDA's third and fourth pleas in bar and dismissing Cygnus' complaint

with prejudice.  On August 10, 2015, the circuit court entered a final order incorporating its letter

opinion, and this appeal followed.

## ANALYSIS

This case presents issues of law and, accordingly, we review de novo the judgment

below.  *City of Richmond v. Suntrust Bank*, 283 Va. 439, 442, 722 S.E.2d 268, 270 (2012).

I.      THE SPECIAL ASSESSMENTS HAVE PRIORITY OVER A DEED OF TRUST RECORDED
        BEFORE THE IMPOSITION OF SPECIAL ASSESSMENTS.

Special assessments are nothing new.  *See Norfolk City v. Ellis*, 67 Va. (26 Gratt.) 224

(1875).  The Constitution of Virginia authorizes localities to impose special assessments to fund

public improvements.  Va. Const. art. X, § 3.  Code § 15.2-2404 permits a locality to impose

"taxes or assessments" upon owners of abutting property for the purpose of building or

improving infrastructure such as sidewalks and street lights.  The General Assembly has also

authorized localities to create community development authorities.  Code § 15.2-5155.  A CDA

is an entity that provides a locality with an additional means to finance infrastructure associated

with development in an authority district.  2006 Op. Atty. Gen. 89, 90; *see also* Code

§ 15.2-5158.

As one would expect, disputes over the priority of special assessments are likewise

nothing new.  Courts have developed extensive precedent adjudicating the extent to which a

special assessment lien has priority over other liens.  As a general proposition, under the "race

notice" statute, Code § 55-96(A)(1), the first to record an interest in real estate has priority over

4

those who subsequently record. With respect to the priority of special assessment liens, one

writer notes that

> Practically every case in which the reviewing court has discussed
> the question supports the doctrine that to give a special or local
> assessment lien superiority over an earlier private lien or mortgage
> it is not essential that the statute imposing the special lien declare
> its superiority in express terms. Even those few cases which on
> their face appear to take a contrary view have either been
> explained away or repudiated by later decisions.

V. Woerner, Annotation, *Superpriority of Special or Local Assessment Lien Over Earlier Private Lien or Mortgage, Where Statute Creating Such Special Lien is Silent as to Superiority*, 75 A.L.R.2d 1121, § 2 (1961 & 2016 rev.). Our review of Virginia law leads us to conclude that a special assessment lien has priority over a previously recorded deed of trust.[2]

*City of Richmond v. Williams & Bowe*, 102 Va. 733, 47 S.E. 844 (1904) sets forth some background principles. In that case, the City of Richmond had imposed a special assessment on property after a deed of trust was recorded. *Id.* at 734-35, 47 S.E. at 844. This Court examined whether the deed of trust, recorded before the special assessment was imposed, had priority over the special assessment. *Id.* at 735, 47 S.E. at 844. In reversing the circuit court's judgment that the previously recorded deed of trust had priority over the special assessment, we noted that no statute "expressly declare[d] that the lien of the assessment is paramount to all other liens." *Id.* at 742, 47 S.E. at 847 (quoting *Morey v. City of Duluth*, 77 N.W. 829, 830 (Minn. 1899)). Nevertheless, relying on persuasive authority from other courts, we concluded that the special

---

[2] Two of Cygnus' assignments of error do not merit extensive discussion. Cygnus assigns error to the circuit court's mention of the fact that Cygnus is a "sophisticated business owner." This was a passing comment by the court rather than a substantive legal ruling, and nothing in the court's letter opinion suggests it employed an improper legal standard. Cygnus also assigns error to the denial of its motion for summary judgment. This claim rises or falls based on the other arguments Cygnus presents. Since Cygnus was not entitled to the relief it sought, the circuit court's denial of summary judgment was proper.

assessment lien had priority over other liens "by necessary implication." *Id.* at 743, 47 S.E. at 847 (quoting *Morey*, 77 N.W. at 830). We observed that special assessment liens do not "stand upon the footing of an ordinary incumbrance." *Id.* at 741, 47 S.E. at 846 (quoting *Osterberg v. Union Trust Co.*, 93 U.S. 424, 428 (1877)). Such liens secure funding for improvements that operate to "the benefit of all interests in the land, for that of the lienholder as well as that of the fee owner, and necessarily the lien of the assessment for the improvement must be co-extensive with the estate benefited and assessed." *Id.* at 743, 47 S.E. at 847 (quoting *Morey*, 77 N.W. at 830). We concluded that unless otherwise directed by statute, a special assessment lien is "paramount to all other interests therein, including prior mortgages or other liens thereon," and "is not displaced by a sale of the property under a preexisting judgment or decree." *Id.* at 742-43, 47 S.E. at 846-47 (internal quotation marks and citation omitted).

The Court also pointed out that

> The principle that a tax lien is superior in dignity to all other liens upon the land on which it is assessed . . . must, upon reason as well as authority, be extended to assessments by municipalities for local improvements, which are in the nature of a tax, otherwise the whole scheme for local improvements . . . would be . . . "practically defeated," since such improvements might be completely prevented by a mortgage or deed of trust on property equal to the value of the property.

*Id.* 744-45, 47 S.E. at 847-48 (quoting *Morey*, 77 N.W. at 830).

*City of Richmond v. Williams & Bowe* has never been overruled or even questioned. The General Assembly is presumed to be familiar with this Court's cases. *Waterman v. Halverson*, 261 Va. 203, 207, 540 S.E.2d 867, 869 (2001). In addition, as we have previously observed, inaction by the General Assembly despite awareness of the Court's interpretation of a statute "is not only acquiescence but approval" of that interpretation. *Manchester Oaks Homeowners Ass'n*

6

*v. Batt*, 284 Va. 409, 428, 732 S.E.2d 690, 702 (2012) (citing *Barson v. Commonwealth*, 284 Va. 67, 74, 726 S.E.2d 292, 296 (2012)).

Cygnus argues that the current statutory scheme displaces *City of Richmond v. Williams & Bowe*. Virginia is a "race-notice" jurisdiction, Cygnus contends, and, therefore, the first party to record its deed, deed of trust, or other interest has priority over parties who do not record, or who record later. *See* Code § 55-96(A)(1). Cygnus points to the parallels between the recording statute, Code § 55-96(A)(1), and the final clauses of Code § 15.2-2411, which address community development special assessment liens. Cygnus contends that because the Bank of America deed of trust was recorded before the special assessment lien, and was therefore senior in lien priority, the foreclosure of the Bank of America deed of trust extinguished the special assessment lien.

Code § 55-96(A)(1), the general recording statute, provides in relevant part that

> [e]very (i) such contract in writing, (ii) deed conveying any such estate or term, (iii) deed of gift, or deed of trust, or mortgage conveying real estate . . . shall be void as to all purchasers for valuable consideration without notice not parties thereto and lien creditors, until and except from the time it is duly admitted to record . . . .

Code § 15.2-2411 provides in relevant part that

> [t]he amount finally assessed against or apportioned to each landowner, or fixed by agreement with him, as hereinbefore provided, shall be a lien enforceable in equity on his abutting land, from the time when the work of improvement has been completed, subject to his right of appeal and objections as aforesaid. Such lien shall be enforceable against any person deemed to have had notice of the proposed assessment under § 15.2-2412, but if no abstract of the resolution or ordinance authorizing the improvement is docketed as provided in § 15.2-2412, such lien shall be void as to all purchasers for valuable consideration without notice and lien creditors until and except from the time it is duly admitted to record in the county or city wherein the land is situated.

7

Code § 15.2-2411 specifically references Code § 15.2-2412. Code § 15.2-2412 provides that

> [w]hen any improvement is authorized for which assessments may be made against the abutting landowners, the governing body may, before the amount to be finally assessed against or apportioned to each landowner or fixed by agreement is determined, cause to be recorded in the deed book of the circuit court clerk's office for such locality, an abstract of the resolution or ordinance authorizing such improvement showing the ownership and location of the property to be affected by the proposed improvement and the estimated amount that will be assessed against or apportioned to each landowner or fixed by agreement with him and the same shall be indexed in the name of the owner of the property. Such assessment shall be a lien solely on the abutting land as provided in § 15.2-2411.
>
> After the completion of the improvement, the estimated amount shall be amended to show the amount finally assessed against or apportioned to each landowner or fixed by agreement with him . . . . From the time of the docketing of such abstract, any purchaser of, or creditor acquiring a lien on, any of the property described therein shall be deemed to have had notice of the proposed assessment.

Reading Code § 15.2-2412 together with Code § 15.2-2411, on the facts presented here, establishes the following: The City of Portsmouth filed in the deed book of the circuit court clerk's office an abstract of the ordinance authorizing the improvements. By operation of law, the lien then became enforceable against "any person" – which would include subsequent purchasers – deemed to have had notice of the assessment. Code § 15.2-2411. Code § 15.2-2411 only renders the lien void against a purchaser for consideration when an abstract of the resolution or ordinance is not docketed and the purchaser otherwise had no notice. Cygnus had notice of the assessment and the lien when it acquired the deed of trust and the property at foreclosure. Accordingly, the lien is enforceable against Cygnus. If the City had not docketed the abstract of the ordinance, and Cygnus otherwise had no notice of the special assessments, then the special assessment lien would have been void as to Cygnus.

8

It is true that the final two clauses of Code § 15.2-2411 closely parallel the general recording "race-notice" statute, Code § 55-96(A)(1). However, Code § 15.2-2411 also provides the following prefatory clause to that language: "[I]f no abstract of the resolution or ordinance . . . is docketed as provided in § 15.2-2412," *then* "such lien shall be void as to all purchasers for valuable consideration without notice and lien creditors . . . ."[3] Here, the abstract of the resolution or ordinance *was* docketed as provided in Code § 15.2-2412, rendering the voiding language of Code § 15.2-2411 inapplicable.

Code § 15.2-5158(A)(5) further demonstrates why a special assessment lien has priority over other liens in the Commonwealth. Code § 15.2-5158, titled "Additional powers of community development authorities," provides in subsection (A)(5) that "[n]otwithstanding any other provision of law, any assessments made pursuant to this section may be made effective as a lien upon a specified date, by ordinance, but such assessments may not thereafter be modified in a manner inconsistent with the terms of the debt instruments financing the improvements." As the City argues, a finding that the special assessments were extinguished by the foreclosure sale would constitute a modification of the special assessments in a manner inconsistent with the underlying debt instruments. A foreclosure sale that vaporizes the special assessment lien would constitute a de facto modification of the assessment in a manner inconsistent with the terms of the debt instruments financing the improvements.

Cygnus contends that Code § 15.2-5158(A)(5) has nothing to do with the contractual rights of lienholders, and that it is instead a delineation of the powers of CDAs and localities, that is, the language prohibits a CDA from modifying the assessment in a manner inconsistent

---

[3] If the default race notice statute found in Code § 55-96(A)(1) applied, there would be no need for the General Assembly to adopt a differently worded statute to govern special assessments. The fact is that special assessment liens *are* different from garden variety liens, and, accordingly, the law treats them differently with respect to their priority.

9

with the debt instrument that finances the improvement. The plain language of this statute, however, is not so limited. It prohibits a modification of the assessment, period. Furthermore, the Code specifies that these statutes should be "liberally construed" to effectuate their purposes. Code § 15.2-5100. Cygnus' reading would obviously thwart the purpose of these statutes. This Court will construe a statute "with reference to its subject matter, the object sought to be attained, and the legislative purpose in enacting it; the provisions should receive a construction that will render it harmonious with that purpose rather than one which will defeat it." *Esteban v. Commonwealth*, 266 Va. 605, 609, 587 S.E.2d 523, 526 (2003).

Cygnus further asserts that Code § 15.2-5158(A)(5) applies to "assessments" and not to "assessment liens." However, the two are inextricably tied together. The Code contemplates that the assessments would be made effective as a lien. The sentence at issue provides in relevant part that "*any assessments* made pursuant to this section may be *made effective as a lien* upon a specified date, by ordinance, but *such assessments* may not thereafter be modified . . . ." Code § 15.2-5158(A)(5) (emphases added). Voiding the lien would render the assessment a nullity.

Cygnus also argues that such a reading of Code § 15.2-5158(A)(5) renders it unconstitutional because it deprives existing creditors of their property rights. This argument rests on a mistaken assumption about what property rights Cygnus had in the first place. For over 100 years, the law of Virginia has been that a special assessment lien has priority over other liens and that no express statutory provision is required to effectuate this result. *See City of Richmond v. Williams & Bowe*, 102 Va. at 742-43, 47 S.E. at 846-47. No statute has displaced this default rule. Code § 15.2-5158(A)(5) was in effect well before the deed of trust was recorded and the special assessment imposed. Therefore, because Cygnus' claim to priority over

10

the special assessment lien was never in its property rights "bundle of sticks," no stick was taken out of that bundle.[4]

Cygnus notes that the General Assembly amended the Code in 2015 by enacting Code § 15.2-5158(A)(9), which expressly provides that a special assessment imposed by a CDA will "constitute a lien on real estate ranking on parity with real estate taxes." According to Cygnus, this indicates that special assessment liens did not have priority before that enactment. In amending the statute, it appears that the General Assembly thought it prudent to codify in part the holding of a more than 100-year-old case, *City of Richmond v. Williams & Bowe*, 102 Va. at 742-43, 47 S.E. at 846-47. We discern no intent on the part of the General Assembly to change the settled law of Virginia.

Finally, our holding does no violence to the shelter doctrine, under which the successor in interest of one who purchases the real property in good faith stands in the same position as the good faith purchaser even when the successor had notice of a lien. *See Guss v. Sydney Realty Corp.*, 204 Va. 65, 72, 129 S.E.2d 43, 49 (1963); *Federal Land Bank of Baltimore v. Joynes*, 179 Va. 394, 407-08, 18 S.E.2d 917, 923 (1942). The point of this legal principle is to "secure to a purchaser, without notice, the full benefit of his purchase." 8 George W. Thompson, Commentaries on the Modern Law of Real Property § 4315, at 380 (John S. Grimes ed., 1963 Repl.). *See also* 1 Joyce D. Palomar & Rufford G. Patton, Patton & Palomar on Land Titles § 13, at 78 (3d ed. 2003) (the shelter rule gives "the *bfp* the benefit of her bargain and permit[s] her to market the property").

A special assessment, however, *as a matter of law*, cannot "exceed the peculiar benefits resulting from the improvements." Code § 15.2-740. As one writer notes,

---

[4] Persuasive authority has uniformly rejected claims that granting superpriority to a special assessment lien is unconstitutional. *See* 75 A.L.R.2d 1121, § 3b (collecting cases).

> special assessments are always levied on the basis of benefits to the property assessed–benefits in the form of a direct enhancement of the pecuniary value of such property in the amount of the assessment.  Thus there is theoretically a guarantee that all assessments will benefit the property assessed at least to the extent of the amount of such assessment. Assuming, as we must, that this guarantee is effective, the property itself is directly increased in value to the amount of the assessment, and this increase in value necessarily inures to the benefit of all earlier lienholders. Such being the case, there seems to be no good reason why earlier lienholders should not pay for such increased value.

J.C. Peppin, *Priority of Tax and Special Assessment Liens*, 23 Cal. L. Rev. 264, 289 (1935) (footnote omitted).  *See Lannan v. Waltenspiel*, 147 P. 908, 910 (Utah 1915); *Dressman v. Farmers & Traders Nat'l Bank*, 38 S.W. 1052, 1053 (Ky. 1897).  Accordingly, in the limited context of special assessments, the shelter rule has no application, provided that the recordation procedure called for by Code § 15.2-2412 has been followed.

We conclude that a special assessment lien has priority over a previously recorded deed of trust.  This conclusion is in accord with "the overwhelming weight of authority."  Peppin, 23 Cal. L. Rev. at 285-86.

II.  THE LAW FORECLOSES CYGNUS' BELATED CHALLENGE TO THE APPORTIONMENT OF THE FUNDS.

In its complaint, Cygnus asked the court to declare the assessments void "except to the extent that the peculiar benefit of the abutting Improvements increased the value of that property."  Cygnus alleged that the lots it acquired are mostly raw, undeveloped land and that the cost of the assessments will exceed the benefits of the improvements, in violation of Article X, Section 3 of the Constitution of Virginia and Code § 15.2-5158(A)(5).

The Constitution of Virginia specifies that

> [t]he General Assembly by general law may authorize any county, city, town, or regional government to impose taxes or assessments upon abutting property owners for such local public improvements

12

as may be designated by the General Assembly; however, such taxes or assessments shall not be in excess of the peculiar benefits resulting from the improvements to such abutting property owners.

Va. Const. Art. X, § 3. Similarly, Code § 15.2-5158(A)(5)(ii) provides in relevant part that "[t]he taxes or assessments may be imposed upon abutting land which is later subdivided in accordance with the terms of the ordinance forming the district, in amounts which do not exceed the peculiar benefits of the improvements to the abutting land as subdivided."

The infrastructure improvements funded by special assessments can be imposed in several ways. First, the Code permits an agreement between the abutting landowners and the locality. Code § 15.2-2405. If there is no agreement, the abutting property owners must be given notice of the assessment and the amount of the assessment before it becomes effective. Code § 15.2-2408. They may then show cause why the assessment should not be imposed. *Id.* When there is no agreement and the property owner's objections are rejected by the locality, the abutting landowners may appeal to the appropriate circuit court within thirty days. Code § 15.2-2410. The Code makes no provision for the type of belated challenge that Cygnus seeks to mount here.

In addition, a CDA may issue bonds to fund improvements. Code § 15.2-5158(A)(2). The Code imposes strict time constraints upon those who would challenge the issuance of bonds:

> For a period of thirty days after the date of the filing with the circuit court having jurisdiction over any of the political subdivisions which are members of the authority a certified copy of the initial resolution of the authority authorizing the issuance of bonds, any person in interest may contest the validity of the bonds . . . or any provisions which may be recited in any resolution, trust agreement, indenture or other instrument authorizing the issuance of bonds, or any matter contained in, provided for or done or to be done pursuant to the foregoing. If such contest is not given within the thirty-day period, the authority to issue the bonds, the validity of the pledge of revenues necessary to pay the bonds, the validity of any other provision contained in the resolution, trust agreement,

13

> indenture or other instrument, and all proceedings in connection with the authorization and the issuance of the bonds shall be conclusively presumed to have been legally taken and no court shall have authority to inquire into such matters and no such contest shall thereafter be instituted.

Code § 15.2-5126. A declaration that the special assessments are void when the special assessments are pledged to repay bonds would run directly counter to these strictures. Among other things, it would undermine "the validity of the pledge of revenues necessary to pay the bonds." *Id.*

The Constitution of Virginia and the Code of Virginia do not contemplate endless challenges from subsequent purchasers who bought the property with notice of the existence of the special assessment, notice of the Agreement with the former owner, and notice of what infrastructure has been constructed. To permit such belated challenges would not only be contrary to the Code, it would completely unravel the entire legislative system of local improvements funded by special assessments.[5] Cygnus acquired its interest in the deed of trust on December 22, 2011, long after the agreement with the former owner had been finalized and recorded, the assessments approved and recorded, and the bonds issued. It acquired title to these parcels in 2012 following a foreclosure sale and filed suit in February of 2015, approximately nine years after the special assessments were imposed and the bonds issued. Virginia law forecloses Cygnus' belated challenge.

---

[5] We note that Cygnus seeks a declaration that the special assessments are void unless the City or the CDA "can prove the amount of the peculiar benefit to that property from the abutting Improvements." However, this case does not involve a situation in which a CDA has failed to abide by the Agreement, is diverting the funds to impermissible uses, or is not spending the funds at all.

14

CONCLUSION

In light of the clear and longstanding Virginia principles governing priority of special assessment liens over other encumbrances, reading all of the relevant statutory provisions as they apply specifically to the facts, chronology and circumstances of this case, and considering the interplay of the doctrines governing the funding of local improvements by special assessments in the Commonwealth, we will affirm the judgment of the circuit court for the reasons explained above.

*Affirmed*.


JUSTICE McCLANAHAN, with whom CHIEF JUSTICE LEMONS and JUSTICE KELSEY join, dissenting.

The race-notice principles set forth in Code § 15.2-2411 are controlling in this case. Applying these principles to the pleadings on the City's and the CDA's pleas in bar, I would hold that the CDA special assessment lien was extinguished by the foreclosure sale under the prior recorded deed of trust through which Cygnus acquired its subject property. I would thus reverse the circuit court in sustaining the pleas in bar and dismissing Cygnus' quiet title action.[1]

1.

The majority interprets Code § 15.2-2411 in favor of the City and the CDA based upon what I believe is a misreading of the "prefatory clause" in the statute's declaration of the race-notice principles. In relevant part, Code § 15.2-2411 provides that "[the special assessment] lien shall be enforceable against any person deemed to have had notice of the proposed assessment under [Code] § 15.2-2412, but if no abstract of the resolution or ordinance authorizing the

---

[1] Because I would hold that the circuit court failed to correctly apply the race-notice priority principles set forth in Code § 15.2-2411, the Court would not need to address Cygnus' argument that the circuit court's application of Code § 15.2-5158(A)(5) would result in an unconstitutional taking and impairment of contract.

15

improvement is docketed as provided in [Code] § 15.2-2412, such lien *shall be void as to all purchasers for valuable consideration without notice and lien creditors until and except from the time it is duly admitted to record in the county or city wherein the land is situated*." (Emphasis added.)

Code § 15.2-2411 tracks nearly word for word the relevant portion of Virginia's general race-notice recording statute, Code § 55-96(A)(1), in providing that deeds and various other listed instruments "*shall be void as to all purchasers for valuable consideration without notice* not parties thereto *and lien creditors, until and except from the time it is duly admitted to record in the county or city wherein* the property embraced by such [instrument] may be." (Emphases added.) A "first in time" lien creditor is "first in priority" under this statute. *Evans v. Joyner*, 195 Va. 85, 90, 77 S.E.2d 420, 423 (1953) (collecting cases). Thus, a sale under the "prior power" of a deed of trust "cuts off all subsequent mortgages, attachments, judgments, and liens, even [if] the sale should be made to the mortgagor." *Schmidt & Wilson, Inc. v. Carneal*, 164 Va. 412, 416, 180 S.E. 325, 326 (1935) (citation and internal quotation marks omitted); s*ee Cruickshanks v. Pemberton Oaks Townhouse Ass'n*, 512 B.R. 814, 818-819 (Bankr. E.D. Va. 2014) ("Virginia is a 'race-notice' real estate lien jurisdiction. As such, it adheres to a first in time, first in right priority scheme. The first to properly record a lien against real property with the Clerk's Office of the applicable jurisdiction has priority over subsequently recorded liens." (citing Code § 55-96(A)(1); *Duty v. Duty*, 276 Va. 298, 302, 661 S.E.2d 476, 479-80 (2008); and *Hart v. Pace*, 49 Va. Cir. 434, 435 (1999)); *see generally* W. Hamilton Bryson, *Bryson on Virginia Civil Procedure* § 18.03[4][c][i] (4th ed. 2005) (addressing priorities of liens).

Through its incorporation of these long-standing race-notice principles, Code § 15.2-2411 plainly provides that a lien creditor holding a recorded deed of trust has priority over a

16

subsequently established special assessment lien.[2] The special assessment lien is "*void*" as to such lien creditors under the express terms of the statute.[3] *Id.* More specifically, like the treatment of lien creditors under the identical language of the general recording statute at Code § 55-96(A)(1), imparting first in time/first in right status, the special assessment lien under Code § 15.2-2411 is "*void*" as to lien creditors until "*the time it is duly admitted to record.*" *Id.* (emphases added). The lien creditors subordinated to the special assessment lien are those that acquire liens after the special assessment is docketed. In this case, the subject deed of trust originally held by Bank of America (hereinafter referred to as "the Bank's deed of trust") was recorded in 2004, whereas the CDA special assessment was not approved, and its abstract was not docketed, until 2006. Further, in 2012, at the time of the foreclosure sale under the Bank's deed of trust, Code § 15.2-2411 continued to govern the priority of CDA special assessments established under the terms of Code § 15.2-5158(5), which incorporated Code § 15.2-2411 by reference. Accordingly, pursuant to Code § 15.2-2411, the foreclosure sale under the Bank's prior recorded deed of trust "cut off" or extinguished the subordinate CDA special assessment lien. *Schmidt & Wilson, Inc.*, 164 Va. at 416, 180 S.E. at 326.

The majority does not reach this conclusion under its novel reading of Code § 15.2-2411's race-notice language. It interprets this language to mean that a lien creditor like Bank of

----

[2] Code § 15.2-2411's race-notice language as it now appears was incorporated into the statute's predecessor, Code § 15.1-246, by amendment in 1964. *See* 1964 Acts ch. 521. Among other revisions, the protection previously afforded to bona fide purchases was extended to lien creditors.

[3] As this Court recently reiterated, "[i]n construing [a statute], we must apply its plain meaning, and we are not free to add [to] language, nor to ignore language, contained in [it]. That is to say, [w]hen the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed." *Andrews v. Richmond Redevelopment & Hous. Auth.*, 292 Va. 79, 86-87, 787 S.E.2d 96, 100 (2016) (citations and internal quotation marks omitted).

17

America—*with* a recorded deed of trust and *without* notice of a special assessment not yet in existence when the deed of trust was recorded—loses its priority status retroactively with the subsequent docketing of the abstract of a newly created special assessment. This interpretation of Code § 15.2-2411 gives the special assessment super-priority status. The effect is to erroneously read out of the statute the elements of both "race" and "notice" for purposes of priority.

The majority then reasons that since Cygnus VA, LLC (Cygnus' predecessor in title) had notice of the special assessment lien when it acquired the Bank's deed of trust and the secured property at foreclosure, Cygnus VA, LLC was subordinate to the CDA special assessment lien. That conclusion, however, is completely at odds with the shelter doctrine, a fundamental legal principle firmly entrenched in our jurisprudence. *See* Annotation, *Right of One Who, With Knowledge of Outstanding Equity, Derived His Interests in Real Property From or Through a Bona Fide Purchaser, to Same Protection as Latter*, 63 A.L.R. 1362, § I(a) (1929) ("This doctrine has been adopted and adhered to both in England and in this country as an indispensable muniment of title.").

In its acquisition of both the Bank's deed of trust and subsequently the secured property, Cygnus VA, LLC "step[ped] into the shoes" of the Bank under the deed of trust, thereby "succeed[ing] to all of the rights of [the Bank] in that lien." *Federal Land Bank of Baltimore v. Joynes*, 179 Va. 394, 407-08, 18 S.E.2d 917, 923 (1942). In this legal posture, it matters not that Cygnus VA, LLC had actual or constructive notice of the CDA special assessment lien. Under the shelter doctrine, "if a person with notice purchase from one without notice, he is entitled to stand in the latter's shoes and take shelter under his good faith." *Citizens National Bank of Covington, Va. v. McDannald*, 116 Va. 834, 836, 83 S.E. 389, 390 (1914) (citation and internal

18

quotation marks omitted). In other words, "[a] purchaser with notice from a purchaser without notice takes a good title. Otherwise, it is reasoned, a bona fide purchaser without notice might be hindered in the disposition of the property, 'though entitled to have the whole world for his market.'" *Guss v. Sydney Realty Corp.*, 204 Va. 65, 72, 129 S.E.2d 43, 49 (1963) (quoting *Yost v. Critcher*, 112 Va. 870, 876, 72 S.E. 594, 596 (1910)); *see Duty*, 276 Va. at 302, 661 S.E.2d at 478 (quoting *Guss*); *Aragon Coffee Co. v. Rogers*, 105 Va. 51, 54, 52 S.E. 843, 844 (1906) (explaining that, if not for the shelter doctrine, "the bona fide purchaser without notice might be unable to dispose of [his] property, and thus its value in his hands be materially deteriorated"); s*ee also Reeves v. Alabama Land Locators*, 514 So. 2d 917, 920 (Ala. 1987) ("The purpose of this rule is to prevent a stagnation of property and to protect the first purchaser, who, being entitled to hold and enjoy, must be equally entitled to sell. . . . [T]he vendee of the bona fide purchaser is not favored on his own account, but for the sake of him from whom he purchased." (quoting 77 Am. Jur. 2d Vendor and Purchaser § 718 (1975))); *see generally*, 1 Joyce D. Palomar & Rufford G. Patton, Patton & Palomar on Land Titles § 13, at 78 (3d ed. 2003) ("This rule is necessary if the recording act is to give the *bfp* the benefit of her bargain and permit her to market the property." (footnote omitted)); 8 George W. Thompson, Commentaries on the Modern Law of Real Property § 4315, at 380 (John S. Grimes ed., 1963 Repl.) ("The rule is obviously necessary to secure to a purchaser, without notice, the full benefit of his purchase." (footnote omitted)).

Despite, however, the centrality of the shelter doctrine to the lien priority dispute in this case, the majority wholly rejects its application. As it now stands, the majority decision will be read as holding that all special assessment liens authorized under Code § 15.2-2411 will have super-priority status, not just CDA special assessment liens that were given such status under

19

Code § 15.2-5158 with the addition of subsection (A)(9) through a 2015 amendment (further addressed in Part 3, *infra*). The result will be that prior lien creditors lose their ability to sell secured property at full value, and thus lose the benefit of their protected status, in direct contravention of the shelter doctrine. Yet, there is nothing in the terms of Code § 15.2-2411 that necessitates jettisoning this fundamental and exceedingly important doctrine in favor of special assessment liens. It is accordingly manifest error to do so.

The majority relies upon an A.L.R. annotation to support its dismissive treatment of the shelter doctrine. The first sentence of the article states: "*This annotation*, as its title indicates, is limited to the question of the relative superiority between a special or local assessment lien and an earlier private lien or mortgage, *where the statute creating such special lien is silent as to superiority*."[4] V. Woerner, Annotation, *Superpriority of Special or Local Assessment Lien Over Earlier Private Lien or Mortgage, Where Statute Creating Such Special lien is Silent as to Superiority*, 75 A.L.R.2d 1121, §1 (1961 & 2016 rev.) (emphases added). Virginia statutory law, however, is not "silent as to superiority." *Id*. Code § 15.2-2411 specifically addresses the "relative superiority," *id*., of a special assessment. A special assessment "shall be void as to all purchasers for valuable consideration without notice and lien creditors until and except from the time it is duly admitted to record in the county or city wherein the land is situated." Code § 15.2-2411. As explained above, the "without notice" and "until and except from the time it is duly admitted to record" language was lifted verbatim from the general race-notice statute, which has always been interpreted to incorporate the historic shelter doctrine.

The majority's misreading of Code § 15.2-2411 carries over into its misreading of Code § 15.2-2412. In concluding that Cygnus VA, LLC was subordinate to the assessment lien because

---

[4] It should thus come as no surprise that not a single case cited in this A.L.R. annotation involves a specific race-notice priority statute crafted particularly for special assessments.

it had notice of the lien when it acquired the Bank's deed of trust and the property at foreclosure, the majority points to the language in Code § 15.2-2412 providing that a docketed assessment lien puts subsequent creditors and purchasers on notice. Of course it does. So does every recorded lien under general race-notice principles. The shelter doctrine, however, is the obvious exception to this generality by placing such creditor and/or purchaser in the shoes of the senior lienholder.

Furthermore, the majority's view that special assessments have inherent super-priority status because they provide "'benefits'" to the assessed property by "'enhanc[ing]'" its value "'in the amount of the assessment'" (quoting J.V. Peppin, *Priority of Tax and Special Assessment Liens*, 23 Cal. L. Rev. 264, 289 (1935)) is illogical. If that were true, Code § 15.2-2411 would have no effect whatsoever. Super-priority would be the rule of law—notice or no notice, docketing or no docketing. But the General Assembly deemed otherwise by long ago enacting what is now Code § 15.2-2411, with its incorporation of the race-notice principles. (*See* Part 4, *infra*, addressing history of Code § 15.2-2411.) In addition, the majority instructs us that we "'must'" assume there is "'a guarantee that all [special] assessments will benefit the property assessed at least to the extent of the amount of such assessment'" (quoting Peppin, 23 Cal. L. Rev. at 289). Yet, here, according to allegations in Cygnus' complaint, which we must accept as true for purposes of this appeal, *see Schmidt v. Household Fin. Corp.*, 276 Va. 108, 112, 661 S.E.2d 834, 836 (2008), the majority of Cygnus' subject property remains undeveloped, unimproved raw land and there are no available CDA bond funds to construct the promised

21

infrastructure improvements—the very improvements that are the basis for the City imposing millions of dollars in special assessments on the property.[5]

2.

I also find no support from the following provision in Code § 15.2-5158(A)(5) for the holding that the CDA special assessment lien has priority over the Bank's deed of trust: "Notwithstanding any other provision of law, any assessments made pursuant to this section may be made effective as a lien upon a specified date, by ordinance, but such assessments may not thereafter be modified in a manner inconsistent with the terms of the debt instruments financing the improvements." I agree with Cygnus that this language, plainly read, has nothing to do with the contractual rights of other lienholders. *See Andrews v. Richmond Redevelopment & Hous. Auth.*, 292 Va. 79, 87-88, 787 S.E.2d 96, 101 (2016) ("In construing statutes, this Court has repeatedly adhered to the principle . . . that [t]he plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction." (citations and internal quotation marks omitted)). This language makes no provision for the CDA special assessment lien to be "effective" retroactively against prior lien creditors in contradiction to Code § 15.2-2411's race-notice principles. Code § 15.2-5158(A)(5). Beyond that, this language from Code § 15.2-5158(A)(5) is explicitly limited to placing restrictions on the parties to the special assessment's financing instruments relative to subsequent modifications to the *assessment*. It does not address in any way modifications to *liens* of prior lien creditors like

---

[5] Quoting further from the above-referenced California Law Review article (Peppin, 23 Cal. L. Rev. at 285-86), the majority states that "'the overwhelming weight of authority'" supports its conclusion that the special assessment lien in this case has priority over the Bank's deed of trust. However, in this article's limited treatment of the priority between "assessment liens and private liens," like the A.L.R. annotation, *supra* note 4, not a single case is cited that involves a specific race-notice priority statute crafted particularly for special assessments.

22

Bank of America, or any creditor's lien perfected after the special assessment lien has been established and docketed. The priority status of these other liens is thus unaffected by Code § 15.2-5158(A)(5)—i.e., these other liens simply remain either senior or junior to the special assessment lien depending upon the date they were perfected as far as subsection (A)(5) is concerned.

3.

Furthermore, I do not agree that Code § 15.2-5158(A)(9), interpreted in conjunction with *City of Richmond v. Williams*, 102 Va. 733, 47 S.E. 844 (1904), supports the holding in the present case. The majority's rationale is that, in giving CDA special assessment liens super-priority status by adding subsection (A)(9) to Code § 15.2-5158 through a 2015 amendment (which the City and the CDA agree is not controlling in this case because the subject foreclosure occurred in 2012), the General Assembly was merely codifying a purportedly controlling common law rule recognized more than a century ago in *Williams* that gives a special assessment lien superiority over a prior deed of trust.[6] If, however, the General Assembly's intention was to codify the purported common law rule set forth in *Williams*, it undoubtedly would have so amended Code § 15.2-2411 rather than, or at least in addition to, Code § 15.2-5158. Code § 15.2-2411 (as part of Chapter 24 of Title 15.2, Code §§ 15.2-2400 through -2013) addresses special assessments for service districts overall in Virginia, not just the limited subset of special assessments for CDA special districts under Code § 15.2-5158[7] (as part of Chapter 51, Article 6, of Title 15.2, Code §§ 15.2-5152 through 15.2-20159).

---

[6] I note that since *Williams* was decided, it has never been cited by this Court for that principle.

[7] CDA special districts/special assessments did not exist in Virginia until 1993 (*see* 1993 Acts ch. 850).

23

Cygnus' position is strengthened by the presumption in Virginia "'that a substantive change in law was intended by an amendment to an existing statute,' *Commonwealth v. Bruhn*, 264 Va. 597, 602, 570 S.E.2d 866, 869 (2002) (quoting *Virginia-American Water Co. v. Prince William Cty. Serv. Auth.*, 246 Va. 509, 517, 436 S.E.2d 618, 622-23 (1993)), and thus, we should 'assume that the General Assembly's amendments to the law are purposeful and not unnecessary or vain,' *Virginia-American Water Co.*, 246 Va. at 517, 436 S.E.2d at 623." *REVI, LLC v. Chicago Title Ins.*, 290 Va. 203, 220-21, 776 S.E.2d 808, 818 (2015) (Kelsey, J., dissenting).

Both Code § 15.2-2411 and Code § 15.2-5158 are part of comprehensive statutory schemes. Had the General Assembly intended for either scheme to confer super-priority status upon any special assessments, it would have said so, as it did in 2015 for CDA special assessments with the passage of subsection (A)(9) to Code § 15.2-5158. At the same time, Code § 15.2-2411 provides just the opposite with its continued inclusion of race-notice principles for establishing the priority of other special assessments. "[W]hen the General Assembly has used specific language in one instance, but omits that language or uses different language when addressing a similar subject elsewhere in the Code, we must presume that the difference in the choice of language was intentional." *Zinone v. Lee's Crossing Homeowners Ass'n*, 282 Va. 330, 337, 714 S.E.2d 922, 925 (2011). In this case, when the foreclosure sale on the Bank's deed of trust occurred in 2012, Code § 15.2-2411 was controlling and it conferred no super-priority status on the CDA special assessment lien. Accordingly, the purported common law rule recognized in *Williams* giving a special assessment lien superiority over a prior deed of trust, under the majority's reading of *Williams*, has no relevance in the present case.

24

4.

Still, the majority misapplies *Williams* by indicating that the holding in the case relied on common law rather than a statutory scheme to give special assessment lien superiority over a prior deed of trust. The majority correctly points out that the Acts of Assembly cited in *Williams*, which granted authority to the City of Richmond to make and collect special assessments, did not expressly grant superiority to special assessment liens. But the Acts of Assembly and the Richmond City Code did authorize special assessment liens to be collected in the *same manner as general city taxes*. *See* 1869-70 Acts ch. 101; 1891-92 Acts ch. 312; Richmond City Code tit. 6, ch. 38, § 44 (1885).[8] The City and the CDA argued that the decision in *Williams* had nothing to do with "the then-existing statutory regime." Oral Argument Audio 18:38 to 19:28.[9] *Williams*, however, acknowledged the statutory scheme equating special assessment liens to general city taxes by stating:

> When the Act of February 19, 1892, *supra*, was passed, the Council, by the charter of the city as it then stood, was *expressly authorized* to make improvements of streets by grading, paving, etc., at the expense, in whole or in part, of abutting owners, and was further invested with the power to collect the cost of such improvements by the same processes which it was authorized to use to collect taxes. Acts 1869-70, p. 120. And, by ordinance of the Council, it was *expressly provided*, that "all amounts which hereafter become due and payable to the city by *property owners*

---

[8] Prior to the 1897 and 1898 special assessments at issue in *Williams*, the General Assembly also amended the statute authorizing city and town levies, Code § 1043 (1887), to include language authorizing all cities and towns to make special assessments for local improvements. This amendment provided that the liens for these special assessments would be "enforceable as on other city taxes against real estate." 1895-96 Acts ch. 729 (repealed by 1899-1900 Acts ch. 977). In that same session, the General Assembly amended the general real estate taxation statute to provide that general real estate tax liens should be "prior to any other lien or encumbrance thereon." 1895-96 Acts ch. 220 (codified at Code § 456 (1904)).

[9] *But see* Appellees' Br. at 20 ("*Williams* grounded its holding not only in common law but also in the statutory scheme for special assessments established by the City of Richmond.").

25

> by and on account of any paving, grading, sewers, sewer connections and other improvements made by the order of the Council are to be collected as and in the manner prescribed for the collection of city taxes." City Code 1885, pp. 172-3.

*Williams*, 102 Va. at 737-38, 47 S.E. at 845 (second and third emphases added).

If the majority's hypothesis is correct that the common law already provided superiority to special assessment liens, there would be no need for such statutory authorization. Indeed, many taxation treatises contemporary to *Williams* note that the method of collecting special assessments was purely statutory. *See* Thomas M. Cooley, A Treatise on the Law of Taxation 418 (1881) ("Assessments being a peculiar species of taxation, there must be special authority of law for imposing them."); 2 William H. Page & Paul Jones, A Treatise on the Law of Taxation by Local and Special Assessments § 1112, at 1814 (1909) ("There being no common law of assessments, the method of collecting an assessment is purely statutory."). Special assessment liens were not paramount to prior recorded liens unless provided otherwise by statute. *See* W.H. Burroughs, A Treatise on the Law of Taxation § 150, at 488 (1877) ("If a [local assessment] lien is given, and no specific mode of enforcing provided, it may be enforced by a suit in equity as any other lien."); Charles H. Hamilton, A Treatise on the Law of Taxation by Special Assessments § 708, at 699-700 (1907) ("Although the lien of a prior recorded mortgage is superior to that of a special assessment, it is within the power of the legislature to change the rule, and make the mortgage lien secondary to that of the assessment." (footnote omitted)). No case in Virginia contradicts this historical understanding of special assessments by holding that special assessment liens receive superiority absent any statutory authority.

Furthermore, none of the cases cited in *Williams* contradicts this reading of its holding. The cited cases all recognize that special assessments are governed by statute. The relevant statutes in those cases either (a) do not grant superiority to special assessment liens in "express

26

terms" or "general words and purpose," as is the case in *State v. Aetna Life Insurance*, 20 N.E. 144, 144-45 (Ind. 1889), or (b) do grant superiority to special assessment liens by "reasonable construction which can be given" to the statutes, as in *Morey v. City of Duluth*, 77 N.W. 829, 830 (Minn. 1899). As the Court noted in *Williams*, the "whole scheme for local improvements provided for in the charters of the several cities and towns in this State" informed its holding to give the special assessment liens priority over a deed of trust. *Williams*, 102 Va. at 744-45, 47 S.E. at 847-48.

The predecessor race-notice statute to Code § 15.2-2411 was enacted in 1900, 1899-1900 Acts ch. 1020 (codified at Code § 1041a (1904)). The predecessor statute replaced an earlier amendment providing for special assessment liens that had been repealed the same day as the passage of the race-notice statute. *Supra* note 8; *see also* Code § 1043 (1904) (noting the legislative history in a reviser's note). After the legislative enactments of 1900, the statute providing for special assessment liens no longer provided that the liens would be enforceable in the same manner as city taxes, but instead provided that until the liens were "docketed and indexed they shall not be liens on such real estate as against purchasers thereof for valuable consideration without notice." 1899-1900 Acts ch. 1020.[10]

The City and the CDA contend that the race-notice statute is inapplicable to special assessments because the 1900 race-notice statute was not even mentioned in *Williams*, which was decided four years later, because the Court "would have discussed it if it thought there was a problem." Oral Argument Audio 28:07 to 28:27. The City and the CDA are correct that there was not a problem with the 1900 race-notice statute — but this is so only because the statute was

---

[10] *Adams v. City of Roanoke,* 102 Va. 53, 60-61, 45 S.E. 881, 884 (1903), confirms this understanding by noting that the statute enacted in 1900 "provides a different method of enforcing the lien of the assessment."

27

legally irrelevant to the Court's decision in *Williams*. The special assessment liens in *Williams* were placed on the property in 1897 and 1898 prior to the statute's enactment. The priority of liens are determined when the liens are made effective, which is typically the date of recording, *see* W. Hamilton Bryson, Bryson on Virginia Civil Procedure § 18.03[4][c][i], at 18-20 to 18-21 (4th ed. 2005), and the 1900 statute only applied prospectively to liens recorded after the statute's passage, *see* Page & Jones, *supra*, § 1113, at 1814 ("A statute with reverence to the collection of assessments applies clearly to assessments levied after its passage."); *id.* § 173, at 284 ("Unless clearly retrospective a change of law is assumed to be prospective only.").

Conclusion

For the foregoing reasons, I would hold that Code § 15.2-2411 conferred no super-priority status on the CDA special assessment lien at the time of the foreclosure sale on the Bank's deed of trust and that the special assessment lien was extinguished by the foreclosure. I would thus reverse the circuit court in sustaining the City's and the CDA's pleas in bar and dismissing Cygnus' quiet title action. Therefore, I respectfully dissent.

28